**MSM VILLAGE STORE, Plaintiff**

**v.**

**GMP ASSOCIATES, INC., Defendant**

High Court of American Samoa
Trial Division

CA No. 69-97

April 14, 1998

Before RICHMOND, Associate Justice, AFUOLA, Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, Katopau T. Ainu`u
For Defendant, Aumoeualogo S. Salanoa

On June 9, 1997, plaintiff MSM Village Store ("MSN") filed a complaint against GMP Associates, Inc. ("GMP") seeking payment of $7,000. MSM claims this is the remaining balance on a verbal agreement whereby MSM rendered services for GMP in acquiring a government contract. GMP filed an answer on June 20, 1997, stating that it has not had any contractual relationship with MSM, and that it does not owe any money to MSM. This matter came to trial on February 3, 1998.

## Discussion

### A. Contract between MSM and GMP

The evidence *does* not support the finding of a contract between MSM and GMP. GMP, a Hawaii corporation, performed work in American Samoa on an airport resurfacing project in 1996. MSM claims that there was an oral contract between itself and GMP whereby GMP would pay MSM a finder's fee and charges for other services in connection with the airport project ("services contract"). The amount of the airport project was $120,000, and MSM claims that its compensation under the alleged services contract was $20,000. MSM states that $13,000 of this compensation has been paid and seeks payment for the remaining $7,000.

MSM provides no evidence that would lead us to believe a services contract was formed between MSM and GMP. "To constitute a valid contract, there must be offer, acceptance, and consideration." *Bernston v. Cheney,* 815 F. Supp. 1145, 1147 (N.D. Ill, 1993). There also must be mutual assent, whether subjective, *see, e.g., Beck v. Reynolds,* 903 P.2d 317, 319 (Okl. 1995) ("In order to have a valid contract there must be mutual consent, or a meeting of the minds."), or objective, *see, e.g., City of Canby v. Rinkes,* 902 P.2d 605, 610 (Or. App. 1995) (holding that the objective theory of contract does not depend on whether "minds met," but "whether the parties agreed to the same, express terms of the agreement, and on whether those terms constitute an enforceable agreement.").

There is no written agreement which shows these contractual elements. MSM claims an oral contract, but does not provide sufficient evidence of when that agreement was formed, by whom it was formed, what promises were made, what performance was required, or what the mutual understanding was between the parties. MSM does present an invoice containing the finder's fee amount and amounts for other services, but the invoice was prepared after initiation of this lawsuit. MSM and GMP had neither a "meeting of the minds" nor an agreement to the same express terms. We find, therefore, that there was no express

oral services contract between MSM and GMP.

█ It is possible for the court to find an implied contract from the conduct of the parties. *Ginsu Products, Inc. v. Dart Industries, Inc.,* 786 F.2d 260, 265 (7th Cir. 1986). However, an implied contract still has the same requirements as an express contract, including mutual agreement. *Matter of Penn Cent. Transp. Co.,* 831 F.2d 1221, 1228 (3rd Cir. 1987) ("An implied-in-fact contract is a true contract arising from mutual agreement and intent to promise, but where the agreement and promise have not been verbally expressed. The agreement is inferred from the conduct of the parties. The elements necessary to form an implied-in-fact contract are identical to those required for an express agreement."); *Dr. Franklin Perkins School v. Freeman,* 741 F.2d 1503, 1515 (7th Cir. 1984) (quoting *In re D. Federico Co., Inc.,* 8 B.R. 888, 897 (Bankr. ID. Mass. 1981)). MSM has shown that they provided office space, janitorial services, truck rental, license renewal, phone and fax services, and store advances to GMP. These activities show that there was regular interaction between the parties for some period of time. These activities, however, do not satisfy the elements required for a contract and do not provide evidence of a mutual agreement. Therefore, there is no implied services contract between MSM and GMP.

█ MSM claims that GMP has already paid $13,000 of the $20,000 services contract. Payments made by GMP are not, however, evidence of such a services contract. In December of 1995, GMP and Moru Mane ("Moru"), doing business as MYL Incorporated, entered into a written agency contract. Sallie S. Mane is the licensee doing business as MSM and is Moru's wife. Under the agency contract, Moru was to perform certain services for GMP for compensation of $1,000.00 per month, including following up, with new requests for proposals or other contract procurement of the American Samoa Government. GMP presented evidence of payments they made to Moru. GMP paid Moru $5,000 on November 11, 1996, and $2,000 on November 22, 1996. We believe these payments and the remainder of the $13,000 that MSM claims was paid under an oral contract were actually payments to Moru under the written agency contract. The payments, therefore, do not provide evidence of a contract for a finder's fee or other services between MSM and GMP. There is an express agency contract between GMP and Moru covering activities that would be performed in a finder's fee arrangement. It is therefore unlikely that an implied contract covering the same subject exists between GMP and MSM. *See Matter of Penn Cent.,* 831 F.2d at 1229-30.

## B. Quantum Meruit Recovery

█ Even though no services contract was formed, MSM is entitled to quantum meruit recovery for the benefits they conferred upon GMP. *See, e.g., Fealofa`i v. Reid,* 14 A.S.R.2d 57, 60 (Trial Div. 1990) (finding 'that if a lease did not amount to a binding agreement, each party would nevertheless be entitled to *quantum meruit* recovery for any benefits conferred upon' the other party); *Hardco Inc. v. Lutali,* 14 A.S.R.2d 1, 12 (Trial Div. 1990) (holding that where parties did not attempt to reach agreement on the price of modifications to a building under construction, there was no contract and the court must apply the doctrine of *quantum meruit* to award the contractor the value of the benefit conferred on the buyer). It is evident that MSM provided office space, janitorial services, truck rental, license renewal, phone and fax services, and store advances to GMP. MSM is therefore entitled to recover the reasonable value of these services.

Evidence at trial showed that GMP used MSM's premises for approximately five months, May to September 1996. MSM's statement of September 23, 1996, provides a reasonable basis for calculating the reasonable value of the services provided by MSM to GMP during this five-month period. These services and their monthly value in the September 23 statement include office space and janitorial services—$550, telephone and fax charges—$331.40, and store advances—$157.98, a total of $1,039.38. This total amount multiplied by five months equals $5,196.90, which is a reasonable total valuation for these services. MSM is also entitled to recover the value of providing a truck rental for two days—$100, and reimbursement for payment of the renewal fee for GMP's 1996 business license—$25. The total reasonable value of the services MSM conferred on GMP, under the evidence, is, then, $5,321.90. MSM is therefore entitled to judgment against GMP in the amount of $5,321.190.

### Order

1. No oral contract, either express or implied, exists between MSM and GMP. MSM recovers nothing against GMP on a contractual basis.

2. MSM has conferred services of value upon GMP and is entitled to recover the reasonable value of these services under a theory of *quantum meruit*. MSM recovers damages of $5,321.90 against GMP on a quantum meruit basis, costs of suit, and post-judgment interest at the rate of 6% per annum on the total amount of the damages and costs. Each party shall pay their own attorney's fees.

Judgment shall enter accordingly. It is so ordered.