Argued and submitted January 13, decree set aside;
remanded for further proceedings July 8, 1982

KLEINER,
*Appellant,*
*v.*
RANDALL et al,
*Respondents,*
(No. 79-08-7666, CA A20949)
647 P2d 956

James N. Westwood, Portland, argued the cause for appellant. With him on the briefs were Fredric A. Yerke, and Miller, Nash, Yerke, Wiener & Hager, Portland.

Milo Pope, Mt. Vernon, argued the cause for respondents. With him on the brief were Wendell Gronso, Burns,

attorney for respondents Frank A. Randall and Dale C. Dooley, and Dean E. Miller, and Gigray, Miller, Downen & Weston, Caldwell, Idaho, and Kilpatricks & Pope, Mt. Vernon, attorneys for FMA Financial corporation.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff, purchaser of real property under two land sale contracts, brought this suit for declaratory relief against sellers Randall and Dooley, who are partners in Associated Farm and Cattle Co. (Associated), and against sellers' assignee FMA Leasing Co. (FMA).[1] During trial the parties entered into a stipulated settlement. After plaintiff unsuccessfully moved to withdraw the stipulation, the court entered a decree. Appealing the decree, plaintiff contends, first, that the stipulation should have been withdrawn because the parties were mutually mistaken as to the effect of their agreement, and, second, that the decree as entered was improper because it was inconsistent with the terms of the stipulation. We reverse.

In March, 1978, plaintiff contracted to purchase approximately 3640 acres of land in Harney County from Associated. The contract contained detailed payment terms among its lengthy provisions. It also noted that FMA and others held mortgages on the land. The contract provided that FMA was to be paid from plaintiff's annual payments "to obtain a complete release of all mortgages and liens" held by FMA on the property. The contract also provided that Associated was to pay the other mortgages in full and obtain releases of the land prior to the May 1, 1984, payment. Other terms of this contract are not relevant to this appeal.

In April, 1978, plaintiff and Associated entered into a second land sale contract concerning plaintiff's purchase of an additional 960 acres of land. This contract also included detailed payment terms. The terms of the second contract were virtually identical to the first contract, although FMA was not a mortgagee of the new parcel. However, Associated was still obligated to pay off the other mortgages prior to the May 1, 1984, payment.

At about the same time these contracts were made Randall and Dooley borrowed $101,000 from plaintiff's brother, Eugene Kleiner. He is not a party to this case, and the loan was not directly related to the land sale contracts

---

[1] Another defendant, Western Water Wells, Inc., successfully moved to dismiss and was not a party at trial or on appeal.

At the time this action was commenced, Randall and Dooley were in default on the obligation.

Plaintiff did not make the annual payments due May 1, 1979, on the two contracts, although he did make payments directly to the mortgagees on Associated's underlying obligations. In August, 1979, plaintiff filed suit, alleging that defendants were in default under the contracts.[2] Plaintiff sought specific enforcement of the contracts and credits against the balances he owed under the contracts for loss of crops and other claims. Defendants counterclaimed for specific enforcement.

The case came to trial in August, 1980. On the third day of trial the parties announced in open court that they had reached a settlement. The terms of the stipulated settlement were recited. The trial judge then asked each of the parties if he understood the terms of the stipulation and agreed to be bound by them. Plaintiff, Randall, Dooley, and FMA's vice president each answered affirmatively, and the judge accepted the stipulation.

The agreement required plaintiff to pay into escrow, in a lump sum, the overdue May 1, 1979, and May 1, 1980, contract payments, less credit for the payments plaintiff had made directly on Associated's obligations. The agreement also credited plaintiff with approximately $183,000 against the principal balance of the first contract. It stated that, under these terms, plaintiff would be required to pay "approximately" $337,379 into escrow, with instructions to the escrow agent to pay out as follows: first, $210,000 to FMA; then an amount to make current Associated's other obligations; and, finally, the balance to plaintiff's brother toward payment of Randall's and Dooley's loan. Plaintiff's brother would receive a share, along with FMA, of subsequent payments made by plaintiff under the contracts. The agreement amended the two contracts in other ways not relevant here and otherwise affirmed them.

Shortly after the stipulation was entered, plaintiff realized that the stipulated payment plan would not be

[2] Associated assigned its interest in the two contracts to FMA to secure loans made by FMA to Associated. Plaintiff joined both FMA and Associated as defendants.

sufficient to repay Randall's and Dooley's debt to his brother and Associated's mortgage to FMA. Plaintiff's calculations, checked by a certified public accountant, indicated that both Eugene Kleiner and FMA would be left with substantial outstanding balances at the time plaintiff's contract obligations were completely paid.

Counsel for FMA responded to plaintiff's calculations. Although not concurring with the calculations, he nonetheless acknowledged that there was apparently too little money to pay everyone in full and suggested that the parties meet to discuss the matter further. Subsequently, plaintiff, his counsel, and counsel for FMA met, but the results of that meeting are unclear from the record. Shortly thereafter, counsel for FMA prepared a decree and submitted it to the court. Plaintiff moved to withdraw the stipulation on the ground of mutual mistake of fact as to the effect of the agreement. Plaintiff also opposed FMA's proposed decree, because it was grounded on the parties' mutual mistake and, in addition, it materially varied the terms of the stipulation by requiring a larger initial payment.

The court heard arguments from plaintiff, Associated and FMA, and the parties submitted numerous affidavits. The court denied plaintiff's motion and entered the decree.[3]

Plaintiff first assigns as error the denial of his motion to withdraw the stipulation. He first contends: "Where parties to litigation have consented to a judgment or decree, but one party withdraws his consent before entry of judgment, the court has no power to enter the judgment." Plaintiff moved to withdraw the stipulation prior to entry of the decree. However, plaintiff, as well as defendants, had consented to the stipulation in open court after

[3] The judge wrote in his letter opinion, April 7, 1981:

"The reason for my decision is very simple. The stipulation, in effect would pave the way for [plaintiff] to receive title to the property he was purchasing and it seems to me that it makes very little difference whether or not there is enough money to clear FMA and his brother. The fact remain that [plaintiff] has been guaranteed title when he makes his final payment a agreed. Whether FMA gets its money or his brother gets his money woul appear to be of little consequence. If his brother doesn't wish to go along wit the deal he doesn't have to and the money that would be available can b applied to the FMA mortgage."

its terms had been read into the record. We find no basis in Oregon law for plaintiff's argument. To the contrary, by agreeing to the stipulation the parties entered into a binding contract. Entry of the decree was merely a formality. As the Supreme Court stated long ago:

> "* * * Consent excuses error, and ends all contention between the parties. It leaves nothing for the court to do but to enter what the parties have agreed upon, and when so entered the parties themselves are concluded. From such a decree there is no appeal * * *." *Schmidt v. Oregon Mining Co.,* 28 Or 9, 25, 40 P 406, 40 P 1014, 52 AS 759 (1895).

The stipulated settlement, agreed to in open court, is a contract and cannot be set aside except on grounds adequate to justify the rescission of a contract. *Nieminen v. Pitzer,* 281 Or 53, 57, 573 P2d 1227 (1978); *Westfall v. Wilson,* 255 Or 428, 431, 467 P2d 966 (1970); *Fitzgerald v. Juhlin,* 194 Or 40, 44, 240 P2d 1191 (1952); *State ex rel Adult & Family Ser. v. Hansen,* 54 Or App 47, 50, 634 P2d 256 (1981); *Financial Indemnity v. Howser,* 38 Or App 369, 372, 590 P2d 276 (1979); *see also Davis v. Brown,* 280 Or 561, 571 P2d 912 (1977).

Plaintiff next argues that the court should have granted his motion to withdraw the stipulation because the parties were mutually mistaken as to its effect. A mistake by both parties, fundamental in character, would justify rescission of a contract such as the stipulated agreement. *Shop. Centers v. Stand. Growth Prop.* 265 Or 405, 422-23, 498 P2d 781, 509 P2d 1189 (1973). The implication of plaintiff's argument is that, had the parties known that both plaintiff's brother and FMA would not be fully repaid by the time plaintiff completed his payments under the two contracts, the parties would not have entered into the settlement.

From our review of the sparse record, we conclude that the parties were mistaken as to the amount of money available to accomplish the material aims of the settlement. It is clear from the recited stipulation that the principal desires of the parties were to pay Associated's underlying obligations, the mortgages held by FMA and the note owed to plaintiff's brother. The parties were mutually mistaken as to the amount of money necessary to accomplish those

purposes. The calculation made by plaintiff after the stipulation was made, and confirmed by an accountant, demonstrate the deficiency. Although FMA disputed those calculations in an affidavit, defendants offered no convincing evidence that the money paid under the stipulation would be sufficient to meet all of the obligations as contemplated in the stipulation. There was a mistake of fact which was material to the entire agreed settlement.

Defendants argue that plaintiff's brother was not a party to the law suit or to any of the contracts, so it is immaterial that he would not be paid under the terms of the settlement. Whether or not plaintiff's brother was involved in the suit or the contracts, a material part of the agreement, as far as plaintiff was concerned, was that his brother be paid. This arrangement was agreed to by defendants. The issue is not whether the brother is a party to the settlement agreement, but whether the parties to that agreement agreed that the moneys received would be distributed in part to plaintiff's brother.

During argument on plaintiff's motion to withdraw the stipulation, counsel for FMA stated that, even if the payments made by plaintiff were insufficient to discharge its mortgages, it would release the mortgage lien on completion of plaintiff's payments under the contracts. Defendants argue that plaintiff is not harmed by the fact that there will be insufficient funds to discharge the debt to FMA. They contend that he will receive a clear title to the property, which is what he originally bargained for. It appears from the record, including the two land sale contracts, that there were several underlying encumbrances on the land. FMA's statement that it would discharge the mortgages it held would not necessarily include the other encumbrances. Payment of those from the escrow account was also part of the stipulation. Those could have had a remaining balance after plaintiff's obligation under the land sale contracts were fully discharged. One of the reasons plaintiff brought the law suit was because the sellers had defaulted on the underlying obligations and plaintiff had made some of the defaulted payments. It appears clear from the recited stipulation that a primary purpose of the escrow instructions involved in the stipulation was to insure that

they would be discharged so as to dispel recurring problems such as plaintiff had previously experienced.

Counsel for FMA submitted a form of decree that was objected to by plaintiff on the grounds that the stipulation should be withdrawn and that the decree varied the terms of the stipulation. The stipulation recited that plaintiff was to make an initial payment into escrow of approximately $337,379. The decree submitted by FMA provided for an initial payment of $437,214.32. There is no adequate explanation of the variation in amounts between the stipulation and the decree in the briefs of either party. What is demonstrated is that defendants either interpret the stipulation differently than does plaintiff, or they were all initially mistaken as to the amounts involved when the settlement was agreed upon. There may be other explanations for the variation, but those explanations do not appear in the record. The variation does indicate that there was no firm meeting of the minds as to what the settlement was and what could actually be accomplished.

We conclude from a *de novo* review of the record that there was a material mistake of fact shared by all parties that requires the stipulated settlement to be rejected. The decree, based on the supposed settlement, is set aside, and the case is remanded for further proceedings.