Argued and submitted February 10, resubmitted on record and briefs July 14, affirmed September 13, 1995, petition for review denied January 23, 1996 (322 Or 489)

CITY OF CANBY,
a municipal corporation and
political subdivision of the State of Oregon,
*Respondent,*

*v.*

Michael W. RINKES
and Janet K. Rinkes,
husband and wife,
*Appellants.*

(90-08-180)

Michael W. RINKES
and Janet K. Rinkes,
husband and wife,
*Appellants,*

*v.*

CITY OF CANBY,
a municipal corporation and
political subdivision of the State of Oregon,
*Respondent.*

(90-08-381; CA A79940)

902 P2d 605

Albert J. Bannon argued the cause for appellants. With him on the briefs was Black Helterline.

John R. Dudrey argued the cause for respondent. With him on the brief were Donald R. Stark and Williams, Fredrickson & Stark, P.C.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Michael and Janet Rinkes appeal from a supplemental judgment entered in a consolidated case.[1] The consolidated case consists of an action by the City of Canby to condemn a parcel of property owned by the Rinkeses, and an action by the Rinkeses to enjoin the city from condemning the property and to obtain specific performance and damages for the city's alleged breach of a lease of a portion of it. The supplemental judgment condemned approximately 14 acres of the Rinkeses' property, and awarded the Rinkeses damages and attorney fees on the condemnation and lease claims. The judgment was based, in part, on an arbitration award that determined the amount of damages and attorney fees.

The facts are as follows: In August 1989, the Rinkeses bought approximately 30 acres of land in Canby. The city had a lease with the prior owner of the land to use a portion of the property as a storm-water outfall. After the Rinkeses purchased the property, the lease was terminated. The lease required the city to restore the property to its pre-lease condition on termination of the lease. The city did not act to restore the property, and the Rinkeses spent time and money doing so.

On August 16, 1990, the city filed a complaint against the Rinkeses seeking condemnation of their property for use as a storm-water collection and treatment site. On August 29, 1990, in turn, the Rinkeses filed a complaint against the city seeking (1) a decree of specific performance requiring the city to remove a storm drain pipe and drainage ditch that the city had placed on the property under its lease, (2) a permanent injunction prohibiting the city from taking

---

[1] Before the oral argument in this case, the attorney for the Rinkeses withdrew, citing a conflict of interest. After the Rinkeses sought to hire other counsel, the Rinkeses and the original attorney agreed that the attorney would present the oral argument for the Rinkeses, which he did. Several months after the argument, the Rinkeses wrote to the court expressing dissatisfaction about the argument. In response, by order dated June 12, 1995, the court gave the Rinkeses 28 days to obtain new counsel to reargue the case for them. The order stated that reargument of the case was conditioned on new counsel for the Rinkeses filing an appearance within the 28-day period. The Rinkeses did not obtain new counsel within that time. Instead, they informed the court that they would argue the case themselves. The appellate rules provide that "if one party appears *pro se* [in the Court of Appeals], the case will be submitted without argument by any party." ORAP 6.05(2). Accordingly, we will treat the case as having been submitted on the briefs without argument.

possession of the property and (3) damages resulting from the city's alleged breach of the lease.

The court consolidated the city's condemnation action with the Rinkeses' breach-of-lease action for trial. The court also segregated certain issues for trial. The court directed that, first, the issues whether the city had breached the lease and whether specific performance was an appropriate remedy for the breach would be tried to the court. Second, the legal issues in the condemnation action, which would decide whether the city had the right to proceed with condemnation, would then be tried to the court. Finally, a jury would determine the value of any property condemned and the amount of any recovery by the Rinkeses if the city were found to have breached its lease.

On July 18, 1991, the court entered a judgment disposing of the legal issues in the breach-of-lease action. The court found that the lease had been terminated on July 13, 1990, and that the city had breached it. The court concluded that the lease covered only a small portion of the Rinkeses' property and, as a consequence, that alleged injury to portions of the Rinkeses' property not covered by the lease "was beyond the scope of the lease and constituted a trespass" to the property. The court denied the Rinkeses' request for specific performance and ordered that the damages for the city's breach of the lease would later be determined by a jury.

On October 7, 1991, the trial court resolved the legal issues in the condemnation action and issued an order in which it upheld the city's decision to condemn the Rinkeses' property. The damages due for condemnation of the property and for breach of the lease were then set to be heard by a jury.

On October 22, 1991, the day the jury trial was to begin, the parties reached a settlement, the terms of which were stipulated in open court. The Rinkeses attended the hearing at which the stipulated settlement was entered, and they specifically approved the settlement on the record. The parties agreed that the city would acquire approximately 14 acres of the Rinkeses' property, and that the city would have an easement across the remaining portion of the property to maintain a storm-water outlet pipe. The parties also agreed that

> "[t]he determination of dollars will be made by arbitration, binding arbitration, and the City's portion [of the property] which it's acquiring will be evaluated by the arbitration process for the fair cash [value] of the property they're acquiring plus the easement.
>
> "Also this case settles a lease breach case which the Court found the City to be liable for, and the damages for the breach of that lease will also be done by binding arbitration."

The Rinkeses' attorney asked the court to confirm that the settlement covered the "breach of lease case only and the condemnation." The court confirmed that understanding. It then approved the settlement, stating that the settlement was "binding upon the parties," and directed the parties to comply with it. The court stated that the result of the arbitration would be entered as the final judgment of the court.

Disputes thereafter arose between the parties about the arbitration to be conducted under the settlement. The court held a hearing on December 23, 1991, to address one of the disputes, which concerned the type of evidence that could be presented to the arbitrators. As a result of the hearing, the court entered an order that stated that the "arbitrators selected by the parties in this matter will decide the nature of the arbitration pursuant to the stipulation of the parties previously agreed upon and on the record in this matter."

On January 9, 1992, the trial court entered a judgment dismissing the condemnation action. The judgment reflected that the matter had been "fully compromised and settled," and stated that the judgment would be vacated "upon entry of a supplemental judgment within 60 days from the date of this order." The court did not enter a similar judgment in the breach-of-lease action.

As the parties prepared for the arbitration, it became apparent to the city that the Rinkeses intended to argue that the city had breached the lease a year earlier than the date determined by the court. The Rinkeses also intended to ask the arbitrators to award damages for injury to property outside the property described in the lease — injury the court earlier had ruled "was beyond the scope of the lease and constituted a trespass." A resolution of both those issues in favor of the Rinkeses in the arbitration would increase the damages they could recover.

On January 20, 1992, the city filed a motion to limit the arbitration to the issues framed by the trial court's prior orders and findings of fact and conclusions of law in the case. The city sought that relief because it believed that the Rinkeses were seeking to arbitrate issues beyond those the parties had agreed to arbitrate under the settlement agreement. The Rinkeses responded that the court lacked authority to restrict the arbitration in any way. The court held a hearing and granted the city's motion on February 3. The court stated that the arbitration was to be based on the court's prior rulings, and ordered the parties "to proceed to arbitration pursuant to the terms of the settlement agreement."

On February 6, the Rinkeses filed in the Supreme Court a petition for a writ of mandamus against the trial court and a motion to stay the proceedings at the trial level. The Supreme Court orally denied the motion for a stay on February 7.[2] That same day, the Rinkeses filed a notice of appeal to the Court of Appeals from the judgment of dismissal in the condemnation action.

On February 10, the arbitrators held a hearing to determine the damages and attorney fees to be awarded to the Rinkeses. The Rinkeses attended the hearing and argued that the arbitrators should postpone the arbitration until this court ruled on their appeal. They also argued that the arbitrators lacked jurisdiction to proceed because an appeal had been filed. The arbitrators declined to postpone the arbitration. The Rinkeses and their attorney then left the hearing. The record indicates, however, that evidence was presented on the Rinkeses' behalf at the arbitration. The arbitrators proceeded with the arbitration and made an award of damages and attorney fees to the Rinkeses.

On February 21, the trial court entered a supplemental judgment condemning a portion of the Rinkeses' property and awarding them damages based on the arbitration award. On March 10, 1992, the Rinkeses filed a notice of appeal from the supplemental judgment.

---

[2] The court later denied the mandamus petition on February 14, 1992.

In August 1992, we entered an order dismissing the Rinkeses' appeals. We explained that neither the order dismissing the condemnation action nor the supplemental judgment was a final, appealable judgment. With regard to the supplemental judgment, we explained that once the February 7, 1992, appeal had been filed, it deprived the trial court of jurisdiction to enter a judgment based on the arbitration award. On the other hand, we noted that ORS 19.033(1), which limited the trial court's jurisdiction once the appeal was filed, applied only to judicial proceedings, and did not deprive the arbitrators of jurisdiction to proceed with the arbitration.

On August 31, the trial court withdrew its supplemental judgment. The Rinkeses filed objections to entry of a new supplemental judgment and argued that the trial court had improperly limited the arbitration by ordering that it was controlled by the trial court's findings of fact and conclusions of law. The Rinkeses also filed a motion to set aside the arbitration award and to reschedule the case for arbitration or trial. The court held a hearing and denied the relief requested by the Rinkeses. On May 6, 1993, the court re-entered the supplemental judgment it previously had withdrawn. This appeal followed.

We initially address the Rinkeses' contention that the court's order compelling them to arbitrate pursuant to the settlement agreement should be reversed because the trial court lacked jurisdiction to enter it. They claim that the court lost jurisdiction to enter such an order when it entered its judgment dismissing the condemnation action after the parties had agreed to settle their claims by arbitration.

■ In dismissing the Rinkeses' previous appeals, we stated that no final judgment had been entered in either the condemnation action or the breach-of-lease action. Because no final judgment had been entered disposing of all the parties' claims, the trial court retained jurisdiction over the consolidated case. ORCP 67 B; *see David M. Scott Construction v. Farrell*, 285 Or 563, 569-70, 592 P2d 551 (1979) (decree not final or appealable where the court reserved jurisdiction to enter supplemental judgment and award attorney fees). Both parties anticipated that the trial court would enter a supplemental judgment that would condemn the

property and award damages and attorney fees to the Rinkeses in the consolidated case, and it was within the court's authority to issue orders compelling compliance with the settlement agreement. *See Davis v. Brown*, 280 Or 561, 564-65, 571 P2d 912 (1977) (where parties entered into a stipulated settlement in open court and intended to make a binding contract, court should specifically enforce the stipulated contract). Hence, the trial court had jurisdiction to enter orders in the case, including the order compelling arbitration.

We next address the Rinkeses' contention that the trial court erred by ordering that the arbitrators were bound by the trial court's earlier rulings in the case. They contend that the settlement agreement, which provided that the arbitrators would determine the amount of damages, can be construed to allow them to submit to the arbitrators for decision two issues that were previously decided adversely to them by the court. Those issues are the date on which the lease was breached and the amount of land that is subject to a claim for damages for breach of the lease. They argue that it was within the province of the arbitrators to construe the arbitration provision of the settlement agreement to determine the issues that are arbitrable. The city counters by arguing that the settlement agreement is unambiguous and that it was proper for the court to limit the arbitration to the issues framed by that agreement.[3]

■■ A stipulated settlement, agreed to in open court, is a binding contract. *Kleiner v. Randall*, 58 Or App 126, 131, 647 P2d 956 (1982). If an agreement to arbitrate certain issues is clear as to the issues that are arbitrable, then a court properly can remove from consideration by the arbitrators issues that the parties have not agreed to arbitrate. *Ostrer v. Pine-Eagle School Dist.*, 40 Or App 265, 272, 594 P2d 1296 (1979); *Portland Teachers v. School Dist.*, 27 Or App 247, 250, 555 P2d 943 (1976).

---

[3] The parties agree that the Oregon arbitration statutes, ORS 36.300 *et seq*, do not apply to their settlement agreement, because the agreement was not in writing. We accept the parties' agreement for the purpose of resolving this dispute. *See Halvorsen-Mason Corp. v. Emerick Const. Co.*, 304 Or 407, 745 P2d 1221 (1987) (procedure in ORS 33.310 to ORS 33.330 not applicable in the absence of a written agreement). Consequently, the Oregon arbitration statutes have no bearing on our decision.

■ We agree with the city that the parties' agreement to arbitrate the damages due the Rinkeses is unambiguous. At the time the settlement agreement was made, the court already had resolved the legal issues in the consolidated case. The only issues that remained to be tried were (1) the damages to be awarded the Rinkeses for the breach of the lease that the court had found to have occurred, (2) the value of the condemned property and (3) the amount of attorney fees to be awarded in the litigation.

The Rinkeses argue, nonetheless, that the issues of when the lease was breached, and the extent of the land that was damaged, could still be argued to the arbitrators. As was stipulated in open court, however, the parties agreed to arbitrate *"the damages for the breach of [the] lease"* that *"the Court [had] found the city to be liable for."* (Emphasis supplied.) That provision cannot reasonably be construed to mean that the parties had agreed to arbitrate the issues of when the lease was breached and what land was covered by it. Those issues previously had been resolved by the court and would not have been tried to the jury had the case gone to trial. Before agreeing to the settlement, the Rinkeses repeatedly had tried to get the court to change its ruling about the date of the breach, and the court had refused to do so.

The court also had determined what land was covered by the lease and, hence, was subject to a claim for damages for breach of the lease. The Rinkeses may have disagreed with the court's decision on that issue, but the agreement to arbitrate damages cannot be understood to be an agreement to relitigate what land was covered by the breach.[4] It was proper for the court to limit the arbitration to the issues the parties had agreed to arbitrate, which were those framed by the court's prior rulings.

■ The Rinkeses argue that, if the settlement agreement provided that only the amount of compensation due for the predetermined breach and for the condemned land would

---

[4] In effect, the Rinkeses contend that the arbitration of damages for breach of the lease was to be based on the court's decision that the city had breached the lease, but not on its decisions about when the breach had occurred and what land was covered by the lease, even though the court's decisions on all of those issues were part of the same ruling. The parties' agreement to arbitrate damages cannot reasonably be understood to distinguish among the court's decisions in that way.

be arbitrated, then they never agreed to such an arrangement. They contend that there was no "meeting of the minds," and, so, the settlement agreement must be set aside. As we have said, the settlement agreement was clear. If the Rinkeses were operating under a faulty assumption about its meaning, that is not a valid reason to set it aside. *Davis*, 280 Or at 564 (holding that compromise agreements will not be set aside for ordinary mistakes); *Walcutt v. Inform Graphics, Inc.*, 109 Or App 148, 151, 817 P2d 1353 (1991), *rev den* 312 Or 589 (1992) (settlements not rendered unenforceable by negligent mistakes).

■ ■ Furthermore, Oregon subscribes to the objective theory of contracts. *See, e.g., Harty v. Bye*, 258 Or 398, 403, 483 P2d 458 (1971); *Real Estate Loan Fund v. Hevner*, 76 Or App 349, 354, 709 P2d 727 (1985). That means that whether the parties entered into an agreement does not depend on whether the parties had the same subjective understanding of their agreement, that is, on whether their "minds met" on the same understanding. Rather, it depends on whether the parties agreed to the same, express terms of the agreement, and on whether those terms constitute an enforceable agreement. Here, the parties agreed to the terms of their settlement in open court. Hence, the settlement agreement is valid even if the Rinkeses' subjective understanding of it was different from the city's and the court's understanding.

The Rinkeses raise other arguments on appeal, but they do not require discussion.

Affirmed.