Argued and submitted November 4, 2003, reversed and remanded with instructions March 3, petition for review denied June 1, 2004 (337 Or 84)

Erna E. NEWTON/BOLDT,
nka Erna E. N. Boldt,
aka Erna E. Newton,
*Respondent,*

*v.*

Leroy K. NEWTON,
*Appellant.*

CCV99-11-418; A117552

86 P3d 49

Brooks F. Cooper argued the cause and filed the briefs for appellant.

J. Michael Alexander argued the cause for respondent. With him on the brief was Swanson, Lathen, Alexander & McCann, P. C.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Defendant appeals from a judgment in favor of plaintiff, his mother. The judgment occurred after the trial court allowed plaintiff to repudiate a settlement she and defendant had reached and put on the record at an earlier hearing. On appeal, defendant assigns error to the trial court's denial of his "Motion for Order Implementing Settlement Agreement" and the subsequent judgment in favor of plaintiff. We reverse.

In transactions between plaintiff and defendant occurring in 1995 and 1998, plaintiff conveyed to defendant partial ownership interests in stock and in a parcel of real property. In 1999, however, after plaintiff formed a relationship with a man of whom defendant apparently disapproved, she attempted to refinance the real property, and defendant, fearing that his mother was being imprudent, refused to cooperate. Plaintiff then filed this action seeking to quiet title to the real property in herself and to have the conveyance of stock to defendant declared null and void. She alleged that she made the transfers in order to avoid probate and had lacked donative intent. Defendant counterclaimed for an accounting and for conversion damages stemming from alleged misuse of stock dividends.

After both parties finished presenting evidence but before the court ruled, the parties announced that they had reached a settlement. The following colloquy occurred among the court, counsel and the parties:

"[The Court]: I've been advised you've settled this matter. The lawyers are going to recite on the record the terms of the settlement and I want the parties to listen carefully. I'm going to ask you both whether this is agreeable to you. You may proceed.

"[Defendant's Counsel]: Your honor, I will go through it slowly so [counsel] can stop me if I'm off track at any point.

"[Defendant] will transfer his interest in the [real] property back to his mother. Will not retain any interest in that property.

"* * * * *

"The Golden Gate Produce stock, 55 shares, will be placed in trust. The trustee, we're expecting will be the person who's currently [plaintiff's] broker, although we have to get approval in order to do that.

"[Plaintiff] will receive all of the income from the Golden Gate Produce stock during her lifetime. However, the trustee will have the authority to vote only half the stock, 27 and a half shares. [Defendant] will have the right to vote and participate on half, the 27 and a half shares. * * * And upon [plaintiff's] death, the trust will be distributed to—all of the stock will be distributed to [defendant's] heirs and designees.

"* * * * *

"[The Court]: Now, when you say that the trustee will vote 27 and a half shares and [defendant] will vote 27 and a half shares, what do you mean by that? What is the significance of that?

"[Defendant's Counsel]: The significance is that [defendant] will still be able to actively participate in it as a shareholder instead of the trustee being the only one who can participate on behalf of the 55 shares.

"[Plaintiff's Counsel]: * * * [Plaintiff] has no objection to [defendant] participating and using whatever proxy rights or participatory rights or the shareholder's interest to the tune of at least half of those shares.

"[The Court]: Now, is it fair then for me to assume that neither party will have the right to liquidate their respective 27 and a half shares during the lifetime of [plaintiff]?

"[Plaintiff's Counsel]: That is correct.

"[Defendant's Counsel]: Correct, your honor.

"[The Court]: Thank you. Well, [plaintiff], you've heard the terms of this settlement as outlined by the lawyers. Do you understand those terms?

"[Plaintiff]: Yes, I understand.

"[The Court]: Is that agreeable with you?

"[Plaintiff]: It has to be.

"[The Court]:   Well, it doesn't have to be, ma'am. This isn't the time to get smart about it.

"[Plaintiff]:   Yes, I have to—

"[The Court]:   This case won't settle unless you tell me that it's agreeable with you.

"[Plaintiff]:   Yes, that's agreeable with me. I don't want to be greedy. Yes, it is.

"[The Court]:   This is the final resolution of this matter and neither one can go out and think better of it later or talk to [plaintiff's companion] and he'll say 'What did you do that for?' None of that is going to work.

"[Plaintiff]:   I know, I understand.

"[The Court]:   Once you tell me that this is what you want to do. You're a pretty percepti[ve] lady * * * and I'm not the least bit concerned about your rationality or your ability to make these sorts of decisions.

"* * * But I have no doubt about your ability to make decisions like this. But I'm not going to go along with them unless I'm sure this is what you want to do now? Is this what you want to do?

"[Plaintiff]:   Yes, it is fine with me.

"[The Court]:   Same question to you, [defendant]. Is this agreeable with you?

"[Defendant]:   I agree.

"[The Court]:   You understand the finality of what you're doing here?

"[Defendant]:   Yes, I do.

"[The Court]:   Very well. Well, the settlement as outlined by the parties and counsel is ratified and approved by the court. The court finds this is a reasonable resolution of this dispute. This case will be removed from the docket immediately and dismissed with prejudice."

Defendant drew up settlement documents, but plaintiff repeatedly refused to sign them. Instead, in January 2001, she informed the court that she had not understood the terms of the trust created by the settlement, and she renewed

her request that the court quiet title to the real property in her and declare defendant's interest in the stock void.

The court held a second hearing in late January. Plaintiff appeared *pro se*. She argued—in her capacity as her own attorney and not as a sworn witness—that her former attorney had failed adequately to inform her of the nature and terms of the trust created by the settlement. Specifically, she claimed that when the court explained "neither party will have the right to liquidate their * * * shares" during her lifetime, she did not understand that to mean that she would have no access to the stock, which constituted the principal of the trust. She also claimed not to understand that the costs of administering the trust would be paid by the trust itself. The court, despite its earlier admonitions to plaintiff concerning her express agreement to settle, stated, "I'm satisfied that [plaintiff] didn't understand the terms of the so-called settlement at the time it was put on the record, and I'm going to hold the proceedings entered into on that date to be a nullity, and put it back on the trial docket." The court announced that it would reread the trial transcript and then rule on the merits.

In early May, defendant submitted a motion for an order implementing the settlement agreement. The court did not allow it. Instead, in a letter opinion dated May 8, 2001, the court found that the real property and stock transfers "were ill advised efforts to avoid probate and no present transfer of ownership was contemplated or intended." Judgment was entered in February 2002, quieting title to the real property in plaintiff, declaring the stock transfer and assignment documents null and void, and dismissing defendant's counterclaims.

A settlement agreed to in open court is a contract. *City of Canby v. Rinkes*, 136 Or App 602, 609, 902 P2d 605 (1995), *rev den*, 322 Or 489 (1996). As framed by the parties— correctly, in our opinion—the issue in this case is whether the proceedings at the first hearing demonstrate the formation of a valid contract. Plaintiff argues that they did not. She bases her argument primarily on the trial court's finding that she did not understand the terms of the settlement. The extent of a party's understanding is a question of fact, which binds us

if there is evidence to support it. Here, plaintiff contends that her statements at the second hearing provide sufficient evidence to support the trial court's conclusion that she did not understand the terms of the settlement. Defendant contends that, because plaintiff appeared at the second hearing as her own attorney and was never sworn as a witness, her statements about her level of understanding are nothing more than an attorney's argument, and that the actual evidence contains nothing to counter plaintiff's repeated assertions at the first hearing that she did, in fact, understand. We need not resolve this question, however, because, even if plaintiff's statements as her own attorney amounted to evidence—a question that we do not decide—and therefore serve as adequate basis for the finding that she did not understand the terms of the settlement to which she agreed, she nonetheless cannot prevail. Whether particular historical facts constitute the formation of a contract is a question of law, *Real Estate Loan Fund v. Hevner*, 76 Or App 349, 355, 709 P2d 727 (1985), and we conclude that, as a matter of law, a contract was created at the first hearing regardless of plaintiff's subjective understanding.

■ ■   Oregon subscribes to the objective theory of contracts. *See, e.g., Rinkes*, 136 Or App at 611; *Real Estate Loan Fund*, 76 Or App at 354. Plaintiff does not and could not argue that her statements at the first hearing, viewed objectively, could be anything other than clear and unequivocal assent to the terms as read to her by the court. Her argument, rather, is that her subjective understanding of the terms was mistaken. However, whether parties enter into a contract does not depend on their uncommunicated subjective understanding; rather, it depends on whether the parties manifest assent to the same express terms. *Rinkes*, 136 Or App at 611. The only way plaintiff could avoid the settlement based on her unilateral mistake would be to prove not only that the mistake was about a term that was basic to the settlement, but also that defendant knew or reasonably should have known that she held a mistaken understanding. *Gardner v. Meiling*, 280 Or 665, 674, 572 P2d 1012 (1977). Plaintiff does not allege, nor does anything in the record indicate, that defendant was or should have been aware that plaintiff believed that the trust allowed her access to the

principal during her lifetime. The court's careful colloquy with plaintiff indicates quite the opposite. At most, plaintiff's *pro se* arguments indicate that she was negligent in her discussions with counsel and in her understanding of the settlement agreement; such negligence will not render the settlement unenforceable. *Davis v. Brown*, 280 Or 561, 564, 571 P2d 912 (1977); *Walcutt v. Inform Graphics*, 109 Or App 148, 152, 817 P2d 1353 (1991), *rev den*, 312 Or 589 (1992).

Plaintiff also argues that the proceedings at the first hearing did not form a contract because the writing that defendant ultimately produced contained a term that was not part of the earlier discussion: the term calling for costs of trust administration to be paid from the trust. We reject that argument for several reasons. First, as we have recently noted in the context of an oral settlement agreement,

> "there are several possible ways in which a preliminary agreement may be binding despite the need for * * * subsequent documentation. * * * [T]he documentation may involve standard provisions that the parties are deemed to have incorporated into the specific terms of their settlement. * * * [P]arties who agree on the essential terms of a contract may intend those terms to be binding and, at the same time, implicitly agree to bargain in good faith on the remaining terms. That fact does not prevent a court from enforcing the parties' agreement."

*Hughes v. Misar*, 189 Or App 258, 265-66, 76 P3d 111 (2003) (citations omitted). Here, the provision at issue states: "Administrative expenses of this Trust shall be paid by Trustee from the income generated by this Trust." That is a classic example of both a "standard provision" and a nonessential term. Thus, the fact that it may not have been part of the original oral agreement does not defeat the existence of a binding contract. Second, and more fundamentally, plaintiff's argument presumes that defendant's "Motion for Order Implementing Settlement Agreement" asked the court to adopt the particular written version of the trust that defendant prepared. That is not the case. The motion "moves the court for an order implementing the oral settlement agreement entered into by the parties in open court before the Honorable Patrick D. Gilroy on October 30, 2000." The terms

of that order are left to the sound discretion of the trial court judge on remand.

Reversed and remanded with instructions to enter judgment implementing settlement agreement entered into by the parties on October 30, 2000.