Argued and submitted March 14, affirmed July 11, petition for review denied
December 26, 2007 (343 Or 691)

UNION CEMETERY
ASSOCIATION OF CRAWFORDSVILLE
LINN COUNTY OREGON,
an Oregon nonprofit corporation,
*Plaintiff-Respondent,*

*v.*

Calvin B. COYER,
Danny L. Young, and Sharon L. Young,
*Defendants,*

*and*

Donald SCHILLING
and Charlotte A. Schilling,
*Defendants-Appellants.*

Linn County Circuit Court
020555; A129007

162 P3d 1072

Edward L. Daniels argued the cause for appellants. With him on the briefs were Law Office of Edward L. Daniels and Chelsea D. Armstrong.

Edward F. Schultz argued the cause for respondent. With him on the brief were Joel D. Kalberer and Weatherford, Thompson, Cowgill, Black & Schultz, P.C.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Ortega, Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendants Donald and Charlotte Schilling appeal from a judgment declaring that plaintiff is the owner in fee simple of a 40-foot strip of land including a gravel road (parcel 1 or the subject property) based, in part, on a conveyance and, in addition, on adverse possession. Our review is *de novo*, *Nguyen v. Conner*, 186 Or App 627, 64 P3d 118 (2003), *Lesher v. Strid*, 165 Or App 34, 42, 996 P2d 988 (2000), and we affirm.

Plaintiff operates a 3.69-acre cemetery that is surrounded by defendant's property, tax lot 2002, which consists of 81 acres of grazing land. The subject property connects plaintiff's property to a 28-foot-wide roadway (parcel 2) that, in turn, connects to a public road. A 14-foot-wide gravel road runs south from the end of parcel 2 through the subject property to the cemetery. The gravel road provides the only access from the public road to the cemetery, and the road has been in existence for more than 100 years.[1] Plaintiff received a deed for a "right of way for a wagon road" as to a portion of the subject property in 1880. The deed also conveyed to plaintiff title to another parcel of property. In the final sentence of the deed, the grantors stated that they "hereby relinquish and quitclaim all our right, title and interest in said premises." However, that sentence did not specify whether the described "premises" included the "right of way" pertaining to parcel 1 or whether the "premises" consisted solely of the other property conveyed under the deed.

Parcel 1 is fenced along the full length of its east and west sides and has been so fenced at least since the mid-1930s. The fence has gates that permit defendants' cattle to cross the subject property. A gate and cattle guard are located at the south end of the gravel road, at the entrance to the cemetery, to prevent the entry of cattle. In addition to cemetery access, plaintiff uses the subject property for parking cars and equipment.

---

[1] A map showing the location of the pertinent properties accompanies this opinion as an Addendum.

Defendants leased tax lot 2002 from 1973 until 1991, when they purchased that property.[2] Defendants have used the subject property for moving and corralling cattle, grazing, and parking equipment. Before defendants acquired tax lot 2002, plaintiff used the subject property to pile and store dirt. In 1991,when defendants acquired tax lot 2002, they asked plaintiff to stop piling dirt on the subject property, and plaintiff complied, even posting a sign that prohibited dumping. Plaintiff's witnesses, including its board members, testified that they believed that plaintiff owned the subject property and, as a good neighbor, plaintiff gave defendants permission to corral cattle and park farm equipment on the property in a way that did not conflict with the use of the road by cemetery traffic.

Plaintiff filed this action for quiet title, seeking a declaration that it owns the entire subject property in fee simple, based on either a conveyance or adverse possession. In addition, plaintiff sought a declaration of the parties' ownership and use rights with respect to parcel 2.

In July 2003, the parties' attorneys and a judge met for a settlement conference in the judge's chambers and arrived at a settlement of their disputes with respect to the ownership and use of both parcels 1 and 2. The parties placed the settlement agreement on the record in open court, and the settlement judge approved it. With respect to parcel 1, defendants' counsel recited the following terms on the record:

"With regards to [the subject property] we agree that the Cemetery Association has a *14 foot of even width road*. It will be on the east side of [the subject property]. It will be 14 feet from the east side of [the subject property]. There's a fence, it will be 14 feet towards the west. It's an even 14 foot strip. *So they'll have a road over that*. [Defendants] will have an easement over that 14 foot for ingress and egress, as well as cattle movement which they've been doing in the past. The plaintiffs will also have an easement over an additional 26 foot strip, which will be even with the west side of

---

[2] Defendants' deed to tax lot 2002 expressly excludes "that portion lying within the right-of-way deed," which the parties agree is a reference to the gravel road on the subject property.

the 14 foot strip. Their easement will be for cemetery parking * * *."

(Emphasis added.) The settlement agreement also addressed the ownership and use of parcel 2; the parties agreed that plaintiff owns that parcel and that defendants would have an express easement across it for ingress and egress to their own property.

Pursuant to the court's instructions, defendants' counsel prepared a judgment that incorporated the terms of the settlement agreement as it was recited in open court. Among other terms, the written agreement provided that "[p]laintiff[ ] own[s] the easterly 14' of even width of [the subject property]. The easterly 14' of even width shall be 14' of even width from the North/South fence line on the eastern edge of [the subject property]." The written agreement also required that a survey be made of the 14-foot strip. The survey revealed that the gravel road is not entirely located within 14 feet of the fence and that it extends into the 26-foot-wide portion of the subject property that the parties had agreed would be owned by defendants. Pursuant to the terms of the settlement agreement, plaintiff would have had an easement over that portion of the subject property for parking, but not for ingress and egress to the cemetery. Accordingly, by the terms of the settlement, plaintiff would not have been entitled to use the entire gravel road for access to the cemetery. Moving the gravel road so that it is entirely located within 14 feet of the fence would have required cutting down an oak tree on the cemetery property and relocating the cattle guard and gates at the south end of the gravel road at the entrance of the cemetery. After discovering those problems, plaintiff refused to execute the settlement agreement and judgment.

Defendants then filed a motion to enforce the settlement agreement. Plaintiff objected to the motion, arguing that "the knowledge of the parties regarding the property has changed as a result of the survey required by the Settlement Agreement." In May 2004, the settlement judge heard arguments on the motion and, with the concurrence of the parties, listened to a recording of the July 2003 proceeding in which the settlement was placed on the record. The court then

found that the settlement agreement had been premised on a fundamental mistake and entered an order denying defendants' motion to enforce the settlement agreement.

Defendants filed a petition for a writ of mandamus in the Oregon Supreme Court, which the court denied. The case was set for trial in January 2005. Defendants renewed their motion to enforce the settlement agreement before the trial judge. In their renewed motion, defendants contended for the first time that the settlement judge had erred in setting aside the settlement agreement without holding a formal evidentiary hearing. The trial judge declined to reconsider the settlement judge's ruling.

Shortly before trial, the parties settled their dispute regarding the ownership and use of parcel 2 on the same terms that they had settled that dispute in the original settlement agreement. The court then tried plaintiff's quiet title claim regarding parcel 1. The court concluded that, by virtue of the 1880 deed, plaintiff held fee title to an 18-foot roadway within parcel 1. In addition, the court concluded that plaintiff held title to the remaining 22-foot width of the subject property by adverse possession or, in the alternative, that plaintiff had established an easement by prescription over the entire subject property. On appeal, defendants assert that the settlement judge erred in declining to enforce the settlement agreement. They also challenge each of the trial court's adjudications on the merits.

■ Initially, we reject plaintiff's contention that defendants waived any claim that the trial court erred in declining to enforce the settlement agreement by subsequently settling the parties' dispute with respect to parcel 2. As discussed, the terms of the settlement agreement relating to parcel 2 were substantially identical to the terms to which the parties had originally agreed, but that settlement did not have an impact on the adjudication at trial of the dispute concerning the subject property. There is no evidence that, by settling the parties' dispute relating to parcel 2, defendants intended to waive their right to seek appellate review of the trial court's refusal to enforce the portion of the original settlement agreement that related to the subject property. *See Bennett v. Farmers Ins. Co.*, 332 Or 138, 156, 26 P3d 785 (2001)

("Waiver is the voluntary relinquishment of a known right."). Accordingly, we reject plaintiff's waiver argument.

■■■ We turn to the merits of defendants' arguments relating to the enforceability of the settlement agreement. A stipulated settlement, agreed to in open court, is a binding contract. *City of Canby v. Rinkes,* 136 Or App 602, 609, 902 P2d 605 (1995), *rev den,* 322 Or 489 (1996). Settlements are not rendered unenforceable by negligent mistakes in the parties' knowledge and understandings when they enter into them. *Id.* at 611; *see also Newton/Boldt v. Newton,* 192 Or App 386, 393, 86 P3d 49, *rev den,* 337 Or 84 (2004) (negligence in understanding a settlement agreement will not render the agreement unenforceable). The remedy of rescission is available, however, if the settlement agreement was based on a mutual mistake that was fundamental to the agreement, *Woods and Woods,* 207 Or App 452, 142 P3d 1072 (2006); *Kleiner v. Randall,* 58 Or App 126, 131, 647 P2d 956 (1982), or a unilateral mistake caused by the misconduct of one of the parties, *Raymond v. Feldmann,* 120 Or App 452, 455, 853 P2d 297, *modified on recons,* 124 Or App 543, 863 P2d 1269 (1993), *rev den,* 318 Or 381 (1994). A party seeking rescission must prove the ground for rescission by clear and convincing evidence. *Eulrich v. Snap-On Tools Corp.,* 121 Or App 25, 853 P2d 1350 (1993), *rev den,* 317 Or 583, *vacated on other grounds,* 512 US 1231, 114 S Ct 2731, 129 L Ed 2d 854 (1994); *Erwin and Erwin,* 100 Or App 64, 67, 784 P2d 1109 (1990).

At the hearing on defendants' motion, it was undisputed that the survey of the 14-foot strip showed that the gravel road is not located entirely within that strip but, rather, extends onto tax lot 2002; it also was undisputed that defendants would not allow plaintiff to use tax lot 2002 for cemetery ingress and egress. However, neither party formally offered any evidence with respect to any of the disputed issues. Instead, the court listened to a recording of the settlement hearing and apparently also had before it the survey of the 14-foot strip.

Defendants argued that any mistake concerning the location of the road was not fundamental to the settlement agreement. According to defendants, because plaintiff's

interest was defined by the agreement in relation to the north/south fence, as the easterly 14 feet of even width of the subject property, plaintiff assumed the risk that the road was not entirely located within that description. Defendants' counsel contended that "everybody knew what the lay of the land was." Defendants also asserted that there was no evidence in the record concerning the costs of relocating the road entirely within the 14-foot strip. Plaintiff's counsel told the court:

> "[T]he question that I think needs to be answered that's the factual question of dispute is what is there in the record that would indicate to the Court that either party knew that the road was not in the 14 foot strip, and I think that's the factual basis for the Court making a decision."

After hearing the parties' arguments, the court stated:

> "The road's been there for a hundred years. The litigation is about carving out, you know, a right to use it and *quieting title for that road*, so, you know, either [defendants] knew at the time of this settlement that it wasn't going to work and didn't reveal it, or they didn't know also and it was a mutual mistake. And I don't know—we're guessing—we're speculating about his client's state of mind, which—but either way it was—if they knew that that meant the cattle guard had to be moved and the road had to be moved that was not negotiating in good faith, it was holding back information. Should the people at the Cemetery Association have gone out there and measured out the 14 feet and figured out where the road was going to be? Sure they should have, but that—you know, we made a settlement in good faith, and it wasn't. Either it was a mistake or it wasn't made in good faith, and it doesn't matter which one it was."

(Emphasis added.) The court also stated that it would not have approved the settlement agreement had it known that the existing road, gates, and the cattle guard would have to be moved. The court thus determined that it was a fundamental premise of the parties' settlement that plaintiff would be entitled to use the existing road for cemetery ingress and egress. On June 25, 2004, the court entered an order denying defendants' motion to enforce the settlement agreement.

■ Defendants' argument that the settlement judge erred in denying the motion to enforce the settlement agreement depends, in part, on the premise that the judge erred in failing to conduct an evidentiary hearing. We reject that premise. It is clear from the transcript of the proceedings that the parties and the judge correctly understood that the decisive issue was whether the agreement was flawed by a fundamental mistake concerning the location of the road. It is also clear that the parties—and the judge—assumed that the judge would make that determination on the record that the parties presented to it; neither party sought an evidentiary hearing. Simply put, defendants' premise that the court erred in failing to hold an evidentiary hearing is unpreserved.[3] *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (preservation of error requires party to provide trial court with explanation specific enough to allow court to identify alleged error and correct it if warranted).

That preliminary conclusion informs our disposition of defendants' primary contention that, on *de novo* review, the evidentiary record is insufficient to establish an actionable mistake. As noted, we have before us a limited record on which to review the court's ruling. Implicit in the parties' arguments was the assumption that, in ruling on the motion, the settlement judge would consider information within his own knowledge concerning the parties' intentions and the fundamental purpose of the settlement agreement. The record shows that the judge based his ruling on that knowledge, that defendants did not object to that procedure, and that there is no evidentiary record from which we can conduct a meaningful review of that determination. Defendants' complicity could be characterized in several ways, all fatal to their argument. By not requesting an evidentiary hearing on

---

[3] Approximately six months after the settlement judge denied defendants' motion, defendants renewed that motion before the trial judge. At that time, defendants *did* argue that the issue of mistake could not be resolved without an evidentiary hearing. The trial judge denied the renewed motion, stating that she would not revisit the ruling of the settlement judge. Defendants contend that their renewed motion preserved the issue for appeal. To the contrary, parties cannot invite the court to resolve an issue via one evidentiary process and then—only after receiving an unfavorable ruling—complain about that process. Even assuming that, under certain circumstances, a party could preserve an issue for appellate review by way of a renewed motion, this is not such a case.

their motion and by failing to object to the settlement judge's reliance, in deciding the motion, on his own understanding of the fundamental purpose of the settlement agreement, defendants waived their objection and invited error. Also, in their renewed motion, asserting that, in the absence of an evidentiary hearing, there was insufficient evidence of an actionable mistake to support the settlement judge's decision, defendants failed to make a timely objection.

We proceed to our *de novo* review of the trial court's rulings quieting title to the subject property as to plaintiff based on the 1880 deed and plaintiff's alternative claims for adverse possession or easement by prescription. Because we conclude that clear and convincing evidence supports the court's ruling on plaintiff's adverse possession claim, we need not determine whether plaintiff also took title to any portion of the subject property by deed or acquired prescriptive use rights in that property. *See Allison v. Shepherd*, 285 Or 447, 451, 591 P2d 735 (1979) (following same order of analysis in quiet title action based on alternative claims of ownership by conveyance and adverse possession).

To establish ownership by adverse possession, plaintiffs must prove by clear and convincing evidence that, for a 10-year period, they or their predecessors maintained actual, open, notorious, exclusive, hostile, and continuous possession of the property. *See Hoffman v. Freeman Land and Timber, LLC.*, 329 Or 554, 559, 994 P2d 106 (1999) (stating requirements of adverse possession claim).[4] The requirement for actual use is satisfied if the plaintiff establishes a " 'use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suited.' " *Id.* at 560 (quoting *Allison*, 285 Or at 452). The use is "open and notorious," *Hoffman*, 329 Or at 560, if it is " 'of

---

[4] In 1989, the legislature enacted ORS 105.620, which requires that, to establish an adverse possession claim, defendants must establish, in addition to the common-law elements stated above, that their possession was under an honest belief that they owned the disputed parcel, that their belief continued through the vesting period, and that their belief had an objective basis and was reasonable under the circumstances. However, ORS 105.620 applies only to claims in which the period of adverse possession extends beyond January 1, 1990. The statute therefore does not apply in this case. *See* Or Laws 1989, ch 1069, § 4; *Mid-Valley Resources, Inc. v. Engelson*, 170 Or App 255, 259 n 2, 13 P3d 118 (2000), *rev den*, 332 Or 137 (2001).

such character as to afford the [owner] the means of knowing it, and of the claim.' " *Id.* (quoting *Hicklin v. McClear*, 18 Or 126, 138, 22 P 1057 (1889)). The use is "exclusive" if the use is similar to that which would be expected of an owner in like circumstances. *Hoffman*, 329 Or at 560. The use is "hostile" if the plaintiff demonstrates a subjective intent to " 'possess[ ] the property intending to be its owner and not in subordination to the true owner.' " *Id.* at 561 (quoting *Faulconer v. Williams*, 327 Or 381, 389, 964 P2d 246 (1998)). If, however, the claimant possesses the property under a purely mistaken belief of ownership, that too, will satisfy the element of hostility. *Faulconer*, 327 Or at 390-91.

■ Although our review is *de novo*, to the extent that the trial court's factual findings were based on the credibility of witnesses, we give "substantial weight" to those findings. *Pioneer Resources, LLC v. D. R. Johnson Lumber Co.*, 187 Or App 341, 343, 68 P3d 233, *rev den*, 336 Or 16 (2003). Here, the trial court expressly found that plaintiff's witnesses were credible, but it made no findings concerning the credibility of defendants' only witness. Because the trial court implicitly found plaintiff's witnesses to be more credible than defendants' witness, we defer to those credibility findings. On *de novo* review, we find that the elements of adverse possession have been established by clear and convincing evidence. *Lieberfreund v. Gregory,* 206 Or App 484, 136 P3d 1207 (2006).

The evidence demonstrates that, at least since 1933, plaintiff has actually used the subject property in ways that were open and notorious. Several witnesses testified that plaintiff's use since 1933 included regular cemetery use of the road, maintenance of the road, fences, and ditches, parking cars and heavy equipment, mowing and, until the 1990s, piling dirt. The fences and gates have been in their current locations since at least 1939 and, until 1991, they were maintained by plaintiff. Plaintiff replaced the fences in 1991.

There also was undisputed evidence that until the mid-1970s, when defendants began using the subject property for moving cattle, plaintiff's use was exclusive and that since at least the 1930s, the use has been continuous, in a manner appropriate for the property. *See Allison*, 285 Or at

451 (The use itself must be the same as "would be made by an owner of the same type of land, taking into account the uses for which the land is suited.").

Defendants do not meaningfully challenge plaintiff's evidence that its use was actual, open, notorious, continuous, and exclusive for the requisite period; instead, they primarily challenge the sufficiency of plaintiff's evidence that its use was hostile. Defendants contend that the evidence supports the finding that plaintiff's use of the subject property was merely permissive and that that evidence defeats plaintiff's adverse possession claim. We disagree.

 To establish the element of hostility, adverse possession claimants must demonstrate, by clear and convincing evidence, either that their possession of the disputed property was under an "honest but mistaken belief of ownership," *Hoffman,* 329 Or at 561 n 4, or that the possessors held "a subjective intent to possess the property intending to be its owner and not in subordination to the true owner." *Id.* at 561 (internal quotation marks omitted); *see also Nedry v. Morgan,* 284 Or 65, 70-71, 584 P2d 1381 (1978) (hostility element requires court to inquire into subjective intent of claimant); *Norgard et al v. Busher et ux,* 220 Or 297, 301, 349 P2d 490 (1960) ("Where an occupant of land is in doubt as to the location of the true line it is reasonable to inquire as to his state of mind in occupying the land in dispute."); *Mid-Valley Resources, Inc. v. Engelson,* 170 Or App 255, 260, 13 P3d 118 (2000), *rev den,* 332 Or 137 (2001) (describing permissible means of establishing hostility). In the absence of affirmative proof of either pure mistake or subjective intent to possess, even open, notorious, continuous, and exclusive possession is subservient—and therefore not adverse—to the legal title. *Hoffman,* 329 Or at 561.

 The evidence in this case established that, from at least the 1930s, it was the common understanding of those who were familiar with the subject property that plaintiff owned it and that plaintiff itself believed that it owned the subject property. Plaintiff's board members, many of whom grew up in the area of the subject property in the 1930s and 1940s, testified that they believed that plaintiff was the owner of the subject property. Additionally, the daughter of

former owners of tax lot 2002 testified that, growing up on that property from 1959 to 1978, she understood that the subject property belonged to plaintiff.

Defendants nonetheless point to evidence that, they urge, demonstrates that plaintiff understood that its use of the subject property was merely permissive. Donald Schilling testified that, since defendants began leasing tax lot 2002 in 1973, they have used the subject property for moving cattle between the east and west sides of tax lot 2002 and to and from their other adjacent acreage. They would allow cattle to graze on the subject property briefly, to keep the grass down. As discussed, in 1991, defendants asked plaintiff to stop piling dirt on the subject property, and plaintiff complied. The difficulty for defendant is that the evidence of plaintiff's so-called "permissive" use dates from no earlier than the 1970s, after plaintiff's title by adverse possession already had ripened. Moreover, that evidence did not demonstrate that plaintiff was in doubt as to whether it owned the subject property. *Cf. Mid-Valley Resources, Inc.*[5] As noted, plaintiff's witnesses, including its board members, credibly testified that they believed that plaintiff owned the subject property and, as a good neighbor, plaintiff gave defendants permission to corral cattle and park farm equipment on the property in a way that did not conflict with the use of the road by cemetery traffic. In short, the evidence showed that plaintiff believed, even if mistakenly, that it owned the subject property.

---

[5] In *Mid-Valley Resources, Inc.*, the claimant had acquired property from her parents that was located immediately east of the disputed parcel. However, the claimant testified that she "did not know" whether a fence running along the west side of the disputed parcel was the boundary of her family's property, that "her parents never talked about where the property line was," 170 Or App at 261 n 5, and that "as a child living on the property she did not know where the boundary line to her parents' property was * * *." *Id.* at 261. In evaluating whether that testimony sufficed to place the case within the "pure mistake" doctrine, we explained that an adverse possessor must possess the disputed property under an honest belief that the property is covered by his or her deed and that any uncertainty or conscious doubt as to the location of the relevant property line precludes a finding of pure mistake. *Id.* (citing *Norgard et al*). Accordingly, we found that, because the claimant could not state affirmatively that she believed the disputed property to be owned by her parents before her, there was "no evidence that the [claimants] mistakenly believed [they] owned the disputed parcel * * *." *Mid-Valley Resources, Inc.*, 170 Or App at 260-61.

We conclude that plaintiff has, by clear and convincing evidence, established the elements of adverse possession, including the element of hostility. Accordingly, we do not address whether plaintiff's ownership or use of a portion of the subject property also are supported by the 1880 deed or an easement by prescription.

Affirmed.