Argued and submitted January 11, reversed and remanded September 8, 2011

JEFFREY S. CLEMENT,
*Petitioner-Appellant,*

*v.*

Don MILLS,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV080162; A142614

263 P3d 349

Andrew S. Chilton argued the cause for petitioner. With him on the brief was Chilton & Galli, LLC.

Kathleen Cegla, Attorney-in-Charge, Collateral Remedies, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

**BREWER, C. J.**

In this post-conviction relief action, petitioner challenged his convictions and sentences for kidnapping in the first degree and felon in possession of a firearm in Coos County Circuit Court Case Number 02CR-2061 (the underlying case). In a single assignment of error on appeal, petitioner asserts that the post-conviction court erred in denying his motion to enforce a settlement agreement placed on the record in open court that would have made his sentence for felon in possession of a firearm in the underlying case concurrent with his sentence for felon in possession of a firearm in Coos County Circuit Court Case Number 03CR-1260 (the second case). We reverse and remand.

Although the question whether an enforceable contract exists ultimately is one of law, the underlying issue—whether the parties had a "meeting of the minds"—is one of fact, which we review for any evidence in the record to support the trial court's express or implied findings. *Martin v. Comcast of California*, 209 Or App 82, 97, 146 P3d 380 (2006); *Waverly Const. Co. v. Gold Invest. Co.*, 60 Or App 101, 103 n 1, 652 P2d 880 (1982). In his petition for post-conviction relief in this case, petitioner challenged his convictions and sentences in the underlying case, in which the sentencing court had imposed consecutive prison sentences, totaling 133 months, on the first-degree kidnapping and felon in possession of a firearm counts. Petitioner then filed a motion for partial summary judgment in which he asserted that his trial counsel in the underlying case had performed inadequately by failing to move for a judgment of acquittal on the kidnapping charge. At a hearing on petitioner's motion, defendant's counsel indicated to the post-conviction court that the parties were attempting to settle the case based on her perception that defendant was exposed to legal risk on the kidnapping-related post-conviction claim. Because the parties assured the post-conviction court that they would continue their settlement negotiations, the court postponed the summary judgment hearing until April 23, and it provisionally scheduled a trial on the merits of petitioner's claims for the same day.

On April 23, shortly before the hearing was scheduled to commence, the parties announced that they had

reached an agreement to settle this case. The post-conviction court directed counsel to place the terms of the settlement on the record, and the following colloquy ensued:

"[DEFENDANT'S COUNSEL]: I can put that on the record.

"THE COURT: Okay. Would you do that, please?

"[DEFENDANT'S COUNSEL]: [Petitioner's counsel] previously filed a [partial] motion for summary judgment, and since that time we've been discussing this case. And it was the State's position that this case did carry weight, based on [petitioner's] summary judgment. And then the trial attorney failed to move for a judgment of acquittal, as it related to the kidnapping, and we did feel that there was a severe risk in losing that issue and that [petitioner' counsel] had carried the weight (phonetic), for lack of a better phrase, including that case.

"I did get approval from the District Attorney who originally tried this case to make an offer for a kidnapping in the second degree and run the felon in possession concurrent, and I'll let [petitioner's counsel] put on the record what his client's decided in that regard.

"THE COURT: Well, okay. What was the offer? Let's put it that way.

"[DEFENDANT'S COUNSEL]: Kidnapping in the second degree.

"THE COURT: And it changed to kidnapping.

"[DEFENDANT'S COUNSEL]: And the felon in possession runs concurrent.

"THE COURT: Okay.

"[DEFENDANT'S COUNSEL]: And we would do the judgment—judgment would be submitted to Your Honor.

"THE COURT: Okay. Okay.

"[DEFENDANT'S COUNSEL]: We don't—he doesn't have to go back to the original county and vacate the plea (phonetic)—

"THE COURT: No.

"[DEFENDANT'S COUNSEL]: We can just do an amended judgment here, and I can [draw up] all the paperwork (unintelligible).

"THE COURT:   [Petitioner's counsel].

"[PETITIONER'S COUNSEL]:   I believe that's accurate. Just to be clear and—just a second. Let me get my file because I want to be sure that we have the case numbers on the record.

"Okay. And [defendant's counsel] can correct me if I'm wrong but my understanding is [petitioner], he actually—he had another felon in possession charge in this case, and then there was a separate case that was where he also had a felon in possession charge, and that was Case Number 03CR-1260. This case was number—sorry—02CR-2061. And my understanding of the offer was that both cases would be run concurrent for a total sentence of 70 months prison. Is that correct?

"[DEFENDANT'S COUNSEL]:   Yes. Yeah. That was—

"[PETITIONER'S COUNSEL]:   Okay. Okay. And so that is—he is accepting that offer, then.

"[DEFENDANT'S COUNSEL]:   Okay.

"THE COURT:   Okay. There's a lot of numbers that were stated by [petitioner's counsel], and they don't correspond to anything that I have.

"[PETITIONER'S COUNSEL]:   Okay. I can—let me say it one more time and hopefully this will be more clear. Okay, this post-conviction case, [petitioner] is challenging his convictions in Coos County Circuit Court Case Number 02CR-2061. In that case he was convicted of count one, kidnapping in the first degree, which was merged with count five, conspiracy to commit kidnapping in the first degree. And then he was also convicted of count nine, felon in possession of a firearm. The stipulation of the parties will be that [petitioner's] conviction on count one, which was merged with count five, kidnapping in the first degree, will be reduced to the charge of kidnapping in the second degree and that [petitioner's] sentence, which originally was 115 months on the kidnapping in the first degree, will be reduced to 70 months, which is a Measure 11 mandatory minimum for kidnapping in the second degree, and that that will be run

concurrent with his sentence for a felon in possession on count nine of that same case.

"And then, [petitioner] has a second case, which is Coos County Circuit Court Case Number 03CR-1260, where he was also convicted of one count of felon in possession of a firearm, and that would be run concurrent to this 70-month sentence in Coos County Case Number 02CR-2061. So hopefully, that's clear for the record.

"THE COURT:   Do you agree with that?

"[DEFENDANT'S COUNSEL]:   Yes.

"THE COURT:   Okay. And, [defendant's counsel], you will prepare the amended judgments and send them to [petitioner's counsel] and send them to me (phonetic)?

"[DEFENDANT'S COUNSEL]:   Of course. Yeah, we can actually send them just to Umatilla County, for Judge Brauer's signature unless we can send them to you (phonetic). I'm not sure how—

"THE COURT:   No, that's fine.

"[DEFENDANT'S COUNSEL]:   —you want us to do that. But, yeah, that's our agreement and I'll definitely get the paperwork to [petitioner's counsel].

"THE COURT:   Some judge will sign it.

"[DEFENDANT'S COUNSEL]:   Yes.

"THE COURT: Probably Judge Brauer. Okay, fine. Thank you very much."

Ultimately, defendant's counsel did not prepare an amended judgment, and petitioner filed a motion to enforce the settlement agreement that was placed on the record on April 23. In support of the motion, petitioner's counsel filed a sworn declaration that averred, in pertinent part, as follows:

"Before the April 23, 2009 hearing in this case, [defendant's counsel] called me and made a settlement proposal. The proposal was that petitioner's conviction for Kidnapping I would be reduced to Kidnapping II with a 70-month sentence, concurrent to his sentence for Felon in Possession. I conveyed this settlement proposal to [petitioner] and he accepted it.

"Before we began the April 23, 2009, hearing in this case, I asked [defendant's counsel] to clarify that the agreement was that the 70-month sentence for Kidnapping II would run concurrent to the sentence in [petitioner's] Felon in Possession case. She said that it would, and I said that, in that case, [petitioner] accepted the settlement proposal.

"I then placed the settlement agreement on the record. The terms of that agreement were that petitioner's conviction of Kidnapping in the First Degree [in the underlying case] would be reduced to the lesser-included crime of Kidnapping in the Second Degree, and the sentence on [that count] would be modified to a sentence of 70 months prison and 3 years post-prison supervision, to be served concurrently with the sentence for Felon in Possession of a Firearm [in the underlying case], and the sentence for Felon in Possession of a Firearm [in the other case]. [Defendant's counsel] indicated that I had accurately stated the terms of the settlement agreement, and the court directed the parties to submit a stipulated judgment."

In a written response to petitioner's motion to enforce the settlement agreement, defendant's counsel stated:

"As counsel for the defendant, I contacted [petitioner's counsel] in response to his request to settle this case. We discussed settlement of the Kidnapping in the First Degree charge in [the underlying case]. Our agreement also entailed that the Felon in Possession conviction would be concurrent to the Kidnapping in the Second Degree conviction. At no point during our discussions, either via email or phone, did settlement of an entirely different case enter the picture. [Petitioner's counsel] will tell this court when asked that I never told him a separate Felon in Possession conviction in a separate case was part of our agreement. [Petitioner's counsel] first raised this issue during trial in this matter.

"Counsel for defendant prepared for trial, submitted her memorandum and exhibits and appeared for trial. At the time of trial, [petitioner's counsel] indicated that his client accepted my offer to reduce the Kidnapping in the First Charge to a Kidnapping in the Second Degree charge with the Felon in Possession count to run concurrently.

"Following the hearing that day, I immediately contacted [petitioner's counsel] to be clear that I was not and had no authority to settle an entirely different case. [Petitioner's counsel] did not mention settlement of this second case at any time during our settlement discussions. It is not the intent of defendant to settle an unrelated case. Thus, there is no meeting of the minds and there was no settlement as it related to a case not on the docket or subject to the pending petition for post-conviction relief."

At the hearing on petitioner's motion to enforce the settlement agreement, the court and counsel engaged in the following colloquy:

"[PETITIONER'S COUNSEL]: Your Honor, I believe there's actually sort of three separate issues that the Court potentially may have to deal with today. The Court has not made any ruling on the motion for partial summary judgment, so that's one of the issues. I would submit that the first issue the Court has to address before we get to that is the Petitioner's motion to enforce settlement agreement that I filed. And the State filed a response to that. The parties were last in front of the Court on April 23, 2009, and at that point, the parties placed on the record a settlement that they had reached to resolve [petitioner's] case. The Court approved that settlement and directed the parties to submit a stipulated judgment. So at this case, as the record stands right now, the case is actually settled.

"The problem is when I drafted this stipulated judgment and sent it to [defendant's counsel], there was a—I guess a dispute between the parties as to whether or not this stipulated judgment that I prepared accurately reflected the settlement agreement that the parties had reached. Unfortunately, we were in front of Judge Ceniceros at that time, so we're in front of a different judge today. But again, like I say, as the record stands right now, the case is basically settled, we would submit.

"I requested at the time that I filed the motion to enforce the settlement agreement an audio recording of the April 23rd hearing that I had—that we had here, so that I could present it to a different judge if we ended up in the situation that we're in today. I found out that that hearing that the CD of that hearing actually arrived at my office yesterday, and I've been over here in Pendleton since Tuesday, so unfortunately I haven't been able to get it transcribed and

submitted to the Court, but I would ask for the opportunity to do that. But I would submit that once—and I think the Court can take judicial notice of that hearing anyway, and probably would be able to access it through the court staff, but I intended to prepare a transcript just for the convenience of the Court. But I would submit that the settlement that was placed on the record was perfectly clear. There was no room for misunderstanding, and that it's exactly the same as the stipulated general judgment that I prepared, and that the Court should simply enforce that settlement and that would eliminate the need to decide any of the other issues that are potentially before the Court today.

"THE COURT:  All right. [Defendant's counsel].

"[DEFENDANT'S COUNSEL]:  Judge, first of all, we're running a partial motion for summary judgment. I thought it was the agreement of the parties, and we had discussed this previously that we're just going to go to trial on this matter. The issue on the summary judgment is the only issue in the case, and we we're set for trial.

"Regarding the motion of course (phonetic) for settlement agreement, we don't have an agreement, plain and simple. The Court can take judicial notice of what [petitioner's counsel] placed on the record, but I called [petitioner's counsel] immediately after that and told him that I misunderstood what he was saying. He'll have to admit, today, I believe—I'm not asking him to testify under oath, but he brought up an entirely separate case that he wanted to run concurrent. That was not the agreement. The agreement was regarding this case and the two counts in this case. He wanted a felon in possession charge in a separate case to run concurrent. And when he had mentioned that on the record, I had no idea he was referring to an entirely separate case, and I probably should have made that clear at the time, and I missed it. Plain and simple. Totally missed it. So [petitioner's counsel] will have to admit there was never raised—it was never discussed, and it's not an agreement, because I don't think this Court has the authority to enforce a settlement agreement that was never reached. There's simply no meeting of the minds and we should just try the case.

"THE COURT:  Response, [petitioner's counsel]?

"[PETITIONER'S COUNSEL]:  Well, the problem with that argument is that—and again, this is why I think the

Court needs to at least hear or read the transcript of the April 23rd hearing. At the April 23rd hearing—and as I recall, I actually went through the case numbers twice, because I started—I read the two separate case numbers, and then Judge Ceniceros said, 'you're going a little bit too fast with all these numbers, slow down,' and so I slowed down again and read the case numbers very methodically. It was clear I was talking about two separate cases, or else I wouldn't have read two separate case numbers, and that [defendant's counsel] agreed to that settlement agreement on the record. I don't—I guess I certainly don't dispute that [defendant's counsel] is acting in good faith in saying that she did not understand that that was what we had agreed to or that she did not catch that that's what I was talking about at the time of the settlement. But I would submit that the settlement agreement and that all of the legal authorities in my motion for settlement agreement support this. The settlement agreement is a contract under rules of contract law. It's not the unexpressed intention of the parties or a unilateral mistake if that could avoid a settlement agreement; it's the objectively expressed intention of the parties. And only where there is a mutual mistake as to the terms of the settlement agreement will it justify the Court in setting aside a settlement agreement. So again, I submit the record will be perfectly clear that that's what I stated, that's what [defendant's counsel] agreed to on the record, and there may have been a unilateral mistake of fact but there was no mutual mistake. And therefore, the Court should simply enforce the settlement.

"THE COURT: As I say, I've reviewed the file in its entirety. Based on my review of the file and the arguments of Counsel, I'm going to deny the Petitioner's motion to enforce the settlement agreement. I am also going to deny Petitioner's motion for a partial summary judgment. And now, [petitioner's counsel], are you ready to proceed to trial on the merits?"

The parties then proceeded to trial, the court entered a judgment denying petitioner's claims, and this appeal ensued. On appeal, the parties renew the arguments that they made before the trial court.

A stipulated settlement, agreed to in open court, is a binding contract. *City of Canby v. Rinkes,* 136 Or App 602,

609, 902 P2d 605 (1995), *rev den*, 322 Or 489 (1996). Settlements are not rendered unenforceable by grossly negligent mistakes in the parties' knowledge and understandings when they enter into them. *Id.* at 611; *Newton/Boldt v. Newton*, 192 Or App 386, 393, 86 P3d 49, *rev den*, 337 Or 84 (2004), *cert den sub nom Boldt v. Newton*, 543 US 1173 (2005) (gross negligence in understanding a settlement agreement will not render the agreement unenforceable). A settlement agreement will not be enforced, however, if the agreement was based on a mutual mistake that was fundamental to the agreement, *Woods and Woods*, 207 Or App 452, 142 P3d 1072 (2006), or a unilateral mistake caused by the inequitable conduct of one of the parties. *Raymond v. Feldmann*, 120 Or App 452, 455, 853 P2d 297, *modified on recons*, 124 Or App 543, 863 P2d 1269 (1993), *rev den*, 318 Or 381 (1994).

In this case, petitioner correctly observes that, at the April 23 hearing, defendant's counsel ultimately expressed assent on the record to petitioner's counsel's recital that the parties' settlement agreement extended to the imposition of a concurrent, not consecutive, sentence on the felon in possession of a firearm conviction in the second case. It follows, petitioner asserts, that defendant's counsel's assent on the record to a sentence modification in the second case is binding. In support of that argument, petitioner relies on *Newton/Boldt*. In that case, a party to litigation concerning a trust sought to avoid enforcement of a settlement agreement to which she had previously assented on the record on the ground that she had not understood the effect or terms of the agreement. We concluded that the settlement agreement was enforceable:

> "The only way plaintiff could avoid the settlement based on her unilateral mistake would be to prove not only that the mistake was about a term that was basic to the settlement, but also that defendant knew or reasonably should have known that she held a mistaken understanding. *Gardner v. Meiling*, 280 Or 665, 674, 572 P2d 1012 (1977). Plaintiff does not allege, nor does anything in the record indicate, that defendant was or should have been aware that plaintiff believed that the trust allowed her access to the principal during her lifetime. The court's careful colloquy with plaintiff indicates quite the opposite. At most, plaintiff's *pro se* arguments indicate that she was negligent in her discussions with counsel and in her understanding of

the settlement agreement; such negligence will not render the settlement unenforceable. *Davis v. Brown*, 280 Or 561, 564, 571 P2d 912 (1977); *Walcutt v. Inform Graphics*, 109 Or App 148, 152, 817 P2d 1353 (1991), *rev den*, 312 Or 589 (1992)."

*Newton / Boldt*, 192 Or App at 392-93.

Defendant did not assert before the post-conviction trial court, nor does he assert on appeal, that his trial counsel made a qualifying unilateral mistake that would provide a defense to the enforcement of the parties' settlement agreement. Rather, defendant asserts that there was no meeting of the minds between the parties. That argument is unpersuasive. Defendant's attorney twice signified express assent to the terms of the agreement, including those relating to the second case, that petitioner's counsel recited on the record. Under the objective theory of contracts, there is no evidence to support the post-conviction trial court's implied finding that the parties did not enter into a binding agreement on the record according to the terms that petitioner recited.

Defendant alternatively argues that the post-conviction court lacked authority to modify a sentence in the second case because that case was not the subject of any claim for post-conviction relief in this action. *See, e.g., Bowen v. Johnson*, 166 Or App 89, 93, 999 P2d 1159, *rev den*, 330 Or 553 (2000) (post-conviction relief "is available only as to claims that actually have been alleged in the petition or amended petition"). Defendant's argument further complicates things for several reasons. First, defendant did not make such an argument before the post-conviction court, and he makes no effort to explain why we should consider it for the first time on appeal. Second, insofar as we can discern, the parties did not make the judgment in the second case, including the terms of petitioner's sentence, part of the record in this case. Accordingly, we cannot determine on this record whether enforcement of the settlement agreement would create a conflict between the terms of petitioner's sentences in the underlying case and the second case. Finally, the parties do not acknowledge or address either of those problems.

In order to avoid straying too far into an uncharted thicket, we likewise will not further address those problems.

The terms of the judgment in the second case are neither before us on appeal nor will they properly be before the court on remand. Although it is unclear whether petitioner can receive the benefit he seeks without a modification of his sentence in the second case, he has not asked the post-conviction court for that remedy.[1] Instead, as pertinent here, he has asked the post-conviction court to order his sentences in the underlying case to run concurrently with the sentence in the second case. If we confine ourselves to directing the post-conviction court to do that and no more, we do the least harm in these confused circumstances. That is, (1) we adhere to established rules of contract formation by holding defendant to an objectively created bargain; (2) we do not borrow trouble by ordering a modification of the sentence in the second case when petitioner has made no such request; and (3) in the absence of an adequate record and fully elucidated arguments on appeal, we leave for another day, if necessary, the unraveling of possible conflicts between the terms of petitioner's modified sentences in the underlying case and his sentence in the second case.

In sum, there was no evidence in the record to support the post-conviction court's implied finding that the parties' settlement on the record did not constitute a binding agreement. Accordingly, the court erred in denying petitioner's motion to enforce the settlement agreement. Because petitioner has not sought—nor would enforcement of the settlement agreement require—a modification of his sentence in the second case, the issue of whether the judgment on remand in this case will create a conflict between the terms of petitioner's sentences in the underlying case and his sentence in the second case is not before us nor is its resolution within the scope of our remand.

Reversed and remanded.

---

[1] We assume for present purposes, without deciding, that petitioner's sentence in the second case was imposed after, and consecutively to, his sentences in the underlying case. If that were not true, this appeal seemingly would be pointless. *See* ORS 137.123(1) (providing that "[a] sentence shall be deemed to be a concurrent term unless the judgment expressly provides for consecutive sentences").