Submitted September 6, 2013, affirmed January 23, 2014

Vernile RHOADES,
aka Bud Rhoades,
*Plaintiff,*

*v.*

Lorraine M. BECK,
*Defendant.*

Klamath County Circuit Court
0900859CV

Stella Noreen RHOADES,
aka Noreen Rhoades,
*Plaintiff-Appellant,*

*v.*

Lorraine M. BECK,
*Defendant-Respondent.*

Klamath County Circuit Court
0900860CV; A148767

320 P3d 593

Matthew T. Parks and Parks & Ratliff, P. C., filed the brief for appellant.

Nathan B. McClintock and Corrigall, McClintock & Costello filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Plaintiff appeals from a general judgment dismissing her action to recover damages for personal injuries in a motor vehicle collision. She assigns error to the trial court's order requiring her to sign the documents necessary to complete a settlement agreement, arguing that there was no meeting of the minds between the parties as to the material terms of settlement and, therefore, no binding agreement. The dispute concerns which party is liable for medical expenses, paid by Medicare, that plaintiff received as a result of the collision. We conclude that the record supports the trial court's determination that the parties entered into a binding settlement agreement and therefore affirm.

We state the facts consistently with the trial court's ultimate conclusion.[1] *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Following a motor vehicle collision on March 9, 2007, plaintiff and her husband each filed personal injury actions against defendant. Plaintiff alleged, among other things, that she had incurred medical expenses in the sum of $45,517.69. Trial was scheduled for early May 2010. Shortly before the scheduled trial date, the parties' attorneys discussed settlement and agreed on mutually acceptable terms. In that discussion, the parties agreed that defendant would pay $15,000.00 to plaintiff, $5,500.00 to plaintiff's husband, and any personal injury protection (PIP) liens asserted by their auto insurance carrier, in exchange for plaintiff and her husband holding defendant harmless from all other liens. The parties subsequently confirmed those terms in an exchange of letters.

After that discussion, plaintiff received a notice from the Medicare Secondary Payer Recovery Contractor (MSPRC) that there was a Medicare lien of at least $22,970.62 against plaintiff's recovery. Plaintiff refused to sign the settlement agreement unless Medicare agreed to waive its lien, but defendant maintained that their agreement was not dependent on actions by Medicare. Defendant

---

[1] The parties incorrectly assume that we have *de novo* review in all equity cases, ignoring the 2009 amendments to ORS 19.415. *De novo* review is now the exception rather than the rule in equity cases, and we do not exercise our discretion to review *de novo* in this case.

filed a motion for an order requiring plaintiff to sign the documents necessary to complete the settlement. The trial court agreed with defendant and entered an order granting defendant's motion. When plaintiff refused to sign the settlement documents, the trial court entered a general judgment dismissing plaintiff's action.

On appeal, plaintiff argues that, although the parties discussed a settlement in which defendant would pay plaintiff $15,000.00 and satisfy the PIP lien, the parties were not aware of the Medicare lien and, therefore, reached no agreement as to who would be liable for it. In plaintiff's view, because liability for the Medicare lien was a material term that remained uncertain, the parties never formed a binding settlement agreement. Plaintiff asserts that the trial court erred in determining that the oral discussions were sufficiently definite and certain to create an enforceable contract for settlement, because the settlement discussions were informally conducted, and mere discussions do not produce a contract unless the discussions resulted in a meeting of the minds on all essential terms of the proposed agreement. Plaintiff argues that, because the parties were unaware of any Medicare liens at the time of their settlement discussion, there could be no objective manifestation of intent to be bound to terms in defendant's written release concerning those liens.

Defendant counters that there is no dispute that the parties agreed that defendant would pay plaintiff $15,000.00 and that defendant would satisfy plaintiff's PIP lien in exchange for a full and final release of any and all claims against defendant. Additionally, there was evidence in the record that plaintiff was aware of the Medicare lien at the time of the agreement. Defendant argues that "[t]he fact that [plaintiff] was unaware of the amount of the Medicare lien is not a basis upon which to find that the parties did not enter into a binding agreement to settle the litigation."

We agree with defendant. Oregon subscribes to the objective theory of contract, which provides that the existence and terms of a contract are determined by evidence of the parties' communications and acts. *Newton/Boldt v. Newton,* 192 Or App 386, 392, 86 P3d 49, *rev den,* 337 Or 84

(2004), *cert den*, 543 US 1173 (2005). Plaintiff's subjective understanding that no settlement agreement was reached because the parties did not expressly address the Medicare lien does not preclude the trial court's finding that the evidence objectively established the existence of an agreement. *Bagley v. Mt. Bachelor, Inc.*, 258 Or App 390, 401-02, 310 P3d 692 (2013), *rev allowed*, 354 Or 699 (2014). We will not set aside a settlement in a personal injury case merely because, in hindsight, it was obtained too soon and for too little. *Wheeler v. White Rock Bottling Co.*, 229 Or 360, 366-67, 366 P2d 527 (1961). The trial court's order requiring plaintiff to sign the settlement agreement documents and plaintiff's attorney to sign the stipulated judgment was based on an implicit finding that the parties had a meeting of the minds. *See Clement v. Mills*, 245 Or App 308, 310, 263 P3d 349 (2011) ("Although the question whether an enforceable contract exists ultimately is one of law, the underlying issue—whether the parties had a 'meeting of the minds'—is one of fact, which we review for any evidence in the record to support the trial court's express or implied findings."). That finding is supported by the following evidence in the record.

Plaintiff's complaint, dated March 4, 2010, alleges that plaintiff had incurred medical expenses in the sum of at least $45,517.69. Following the settlement discussion between the parties' attorneys, plaintiff's attorney sent defendant's attorney a letter, dated April 28, 2010, to confirm the terms of agreement they had reached as he understood them: The letter stated: "My understanding is that State Farm will pay as full settlement for [plaintiff's husband], $5,500.00 and for [plaintiff], $15,000.00. In addition, State Farm will pay the PIP Lien to Country Mutual in its entirety." The letter also included a handwritten note following the signature line: "Please confirm my understanding in writing so I may inform the court this matter is resolved." Defendant's attorney's response stated:

> "This will confirm that we have agreed to a settlement of the above cases as follows:
>
> "1. [Plaintiff]—$15,000. State Farm agrees to satisfy the PIP lien and your client will hold State Farm harmless from all other liens to the extent there are any; and

"2. [Husband]—$5,500. State Farm agrees to satisfy the PIP lien and your client will hold State Farm harmless from all other liens to the extent there are any.

"Call me if you have any questions."

Plaintiff's attorney did not respond to that letter.

On May 12, 2010, plaintiff received notice that Medicare had a lien to recover at least $22,970.62 for conditional payments related to the claim.[2] On May 17, 2010, plaintiff's attorney reported to MSPRC that plaintiff had been offered a settlement from the at-fault driver's insurance in the amount of $15,000.00 and requested a waiver of reimbursement to Medicare. Plaintiff's counsel then notified defendant's counsel that the settlement that was discussed was no longer possible because of that asserted lien.

On July 6, 2010, defendant sent plaintiff's attorney settlement documents and checks for execution of the agreement. When plaintiff failed to return the documents, defendant's attorney sent a letter to plaintiff's counsel, dated September 2, 2010, stating:

"I just received a call from the State Farm Adjuster supervising this file. He is most concerned about the inordinate delay in getting the settlement documents signed. My file reflects that I sent you the settlement checks, releases and a General Stipulated Judgment of Dismissal on July 6, 2010. My records also reflect that we had a telephone discussion on July 26 regarding the status of settlement. I recall that you told me that you were having difficulty in getting Medicare to approve the settlement. Obviously, it has been nearly 2 months since I sent you the checks and settlement documents and I should have received back from you the signed original documents long before now. As far as we are concerned, this case has been fully and finally settled and that settlement was not dependent upon any action being taken by Medicare."

Plaintiff's attorney returned an executed release on behalf of plaintiff's husband, but stated that plaintiff was still waiting for a determination from Medicare concerning plaintiff's request for a waiver of the Medicare lien.

_____

[2] Plaintiff later received an amended notice stating that the current amount of the lien was $23,042.83.

The "Release of All Claims" signed by plaintiff's husband was identical to the one for plaintiff, with the exception of the settlement amount. Among other terms, it provided a release from Medicare liens:

"I further represent and warrant that I will satisfy all liens and claims that might relate to this accident, including but not limited to liens made by Medicare/SSDI, Medicaid/SSI, and DHS State of Oregon. I further agree and certify that to the extent future medical care may be required related to this event, I agree and certify that I will hold in trust all funds necessary to satisfy all future liens and claims by Medicare, Medicaid, and/or DHS which pertain to treatment or care for injur[i]es suffered in the above- referenced accident. In consideration of the payment of the above sum, I agree to indemnify and defend and hold harmless the parties hereby released from any claims on settlement funds, including, but not limited to those claims by Medicare/SSDI and Medicaid/SSI, to include the expenses of investigation, attorney fees and other costs of litigation associated with any such claim made."

Defendant argued in support of his motion to enforce the settlement agreement that, "[b]ecause of the passage of time and the lack of evidence of any misunderstanding concerning the terms of settlement," the court should require that plaintiff sign the release and the general stipulated judgment of dismissal so that the case could be dismissed based on the parties' agreement. In response, plaintiff argued that she could not sign the settlement agreement, because it would require her to satisfy all liens and claims that might relate to the accident, including but not limited to liens made by Medicare, and the amount of the Medicare lien exceeded the amount of the settlement proceeds. Plaintiff's counsel acknowledged in an affidavit in support of plaintiff's response that, at the time of the settlement negotiations, both he and defendant's counsel were aware that Medicare had paid amounts for plaintiff's medical treatment related to this incident, but noted that plaintiff had not received a notice of lien prior to those negotiations.

We conclude that the record supports the trial court's implicit finding that the parties' communications and acts objectively established that they had a meeting of the

minds: the parties agreed that the plaintiff would release her claim against defendant and hold defendant harmless from all other liens in exchange for defendant paying plaintiff $15,000.00 and satisfying the PIP lien. The trial court's legal conclusion that there was an enforceable contract was correct.

Affirmed.