IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

URG OPB 17TH AVENUE LLC,               )
                                       )
            Plaintiff,                 )   TC-MD 230275G
                                       )
      v.                               )
                                       )
MULTNOMAH COUNTY ASSESSOR,             )
                                       )   **ORDER DENYING DEFENDANT'S**
            Defendant.                 )   **MOTION TO DISMISS**

This matter came before the court on Defendant's Motion to Dismiss/Enforce Settlement.

Plaintiff's appeal concerns the real market value of the subject property for the 2022–23 tax year;

Defendant's motion to dismiss concerns the scope of the parties' settlement of the subject's

2021–22 real market value.

## I.  FACTS

Plaintiff and Defendant previously settled an appeal of the subject property's 2021–22

real market value, TC–MD 220253N.  In support of its motion to dismiss in the present case,

Defendant submits a string of emails showing negotiations between its representative and

Plaintiff's former representative concerning the resolution of TC–MD 220253N.  (Def's Mot

Dismiss, Ex A.)

Those emails show that Defendant initially offered to set the subject's 2021–22 real

market value at $43 million.  (Def's Mot Dismiss, Ex A at 10.)  After requesting and receiving

additional information explaining the basis for Defendant's offer, Plaintiff wrote:

> "I'm getting this in front of my client, but wanted to understand why the
> offer is about $3M higher than the 2022 RMV?  I'm going to have to explain that.
> There would be a better chance to settle 2021 and not appeal 2022 if the
> appraisers could get to $40,293,000 for 2021."

(*Id*., Ex A at 7.)  Plaintiff's request was for a 2021–22 real market value equal to the 2022–23

value then on the roll, which appears to have been $40.3 million.  Defendant responded by offering to carry over the proposed 2021–22 value to 2022–23, apparently unaware that it was proposing raising the 2022–23 value by $2.7 million:

> "I'm pretty sure we would adjust the 2022 year too to reflect the value for 2021.  We would probably just carry the agreed upon 2021 value over to 2022 which would result in a refund as well for 2022. * * *."

(*Id*.)  Plaintiff counteroffered to lower the 2021–22 value to the amount of the 2022–23 roll value:

> "At $43M, I've recommended moving forward to the actual hearing, but if we can get to $40.3M, I'd recommend accepting.  If the county can get this to $40.3M for both 2021 and 2022, I will do everything I can to get the client to agree. * * *."

Defendant wrote back: "We would agree to $40.3m for both years in order to wrap this case up[.]"  (*Id*., Ex A at 6.)  Plaintiff responded: "My client has approved settlement of the 2021 Real Market Value at $40,293,000 which is the current 2022 value."  (*Id*., Ex A at 5.)  Defendant replied: "Sounds good[.]"  (*Id*., Ex A at 4–5.)

Subsequently, Plaintiff asked Defendant about the effect of the 2021–22 settlement on the 2022–23 maximum assessed value: "Carlos, thinking out loud here, wouldn't the Measure 50 value be lowered for 2021 which in turn would lower the Measure 50 value for 2022?"  (Def's Mot Dismiss, Ex A at 4.)  Defendant responded:  "We are agreeing to lower the 2021 value to $40.3 and carrying that value over for 2022, which is the current value."  (*Id*.)  Plaintiff again asked whether reducing real market value for 2021–22 (an exception year) would result in a lower assessed value in 2022–23; Defendant's representative stated he would check with his appraisers.  (*Id*., Ex A at 3.)  Plaintiff replied: "Thanks Carlos, not trying to be difficult, just want to make sure we are on the same page."  (*Id*., Ex A at 2.)  Defendant's report back from its appraisers stated that a refund for 2021–22 would be generated by a recalculation of the

maximum assessed value, but that "there would likely be no refund for 2022" because "2022 did not have any exception added and in order to receive a refund due to compression we would have to see the overall RMV of the account drop significantly." (*Id*.) Plaintiff's reply concludes the exchange: "We are on the same page." (*Id*., Ex A at 1.)

The court subsequently entered a Judgment of Stipulation in TC–MD 220253N incorporating the parties' document captioned "Stipulation" and attachment labeled "Exhibit 1." (Ptf's Response, Ex A.) The Stipulation was signed by representatives for both parties and recited (in pertinent part) that "[t]he parties agree to the correction of the values on the tax roll(s) as indicated on the attached Exhibit 1." Exhibit 1 contained a table with columns for account number, property address, year, property type, and values. The "year" column contained a single entry: "2021."

## II. ANALYSIS

At issue is whether the parties' agreement bars Plaintiff from appealing the subject's 2022–23 real market value. The parties' dispute is largely factual. Defendant asserts that the parties "reached an agreement for both 2021 and 2022." (Def's Mot Dismiss at 2.) Plaintiff asserts that the parties' final agreement pertained only to 2021–22. (Ptf's Response at 2.)

The court understands Defendant's argument to be that Plaintiff contracted to refrain from appealing the subject's 2022–23 tax roll real market value in the email exchange leading to the 2021–22 settlement and subsequently breached that contract by filing the present appeal. (Def's Reply at 3–4.) Defendant supports its request to dismiss the Complaint by citing *Genest v. John Glenn Corporation*, 298 Or 723, 747, 696 P2d 1058 (1985), for the proposition that a court in equity may require specific performance of sufficiently definite contractual obligations. *See also Dalton v. Robert Jahn Corp.*, 209 Or App 120, 134, 146 P3d 399 (2006) (Breithaupt, J.

pro tem), *rev den*, 342 Or 416 (2007) (discussing state of law and affirming decree of specific performance of settlement agreement).

Defendant's motion can only be granted if the parties' negotiations created a contract under which Plaintiff was obligated not to appeal the 2022–23 year's valuation. The existence of an enforceable contract depends on "whether the parties manifest assent to the same express terms." *Dalton*, 209 Or App at 132 (quoting *Newton/Boldt v. Newton*, 192 Or App 386, 392, 86 P3d 49 (2004).) For the remedy of specific performance, a contract "must be definite in all material respects, with nothing left for future negotiation." *Id*. at 410 (quoting *Booras v. Uyeda*, 295 Or 181, 666 P2d 791 (1983)).

Defendant argues that Plaintiff brought up the concept of "not appeal[ing]" the 2022–23 tax year in its initial email requesting a $40.3 million 2021–22 value. In that email, Plaintiff stated there was a "better chance to settle 2021 and not appeal 2022" if Defendant lowered its offer for 2021–22 to match the roll value for 2022–23. That email was apparently understood by Defendant as an offer to waive any appeal of the 2022–23 year if the 2021–22 value were reduced, but such an offer is not explicit.

Defendant's initial response to Plaintiff's request must have caught Plaintiff by surprise: Defendant offered to carry forward its proposed $43 million settlement to 2022–23. Presumably, Defendant was not at that time attending to the fact that the 2022–23 value was $40.3 million.

Plaintiff rejected the offer and asked if Defendant could get to "$40.3M for both 2021 and 2022." Plaintiff's use of the word "both" could have indicated an offer to waive appeal of 2022–23. It also could have indicated that Plaintiff sought only to match the current 2022–23 value with its proposed 2021–22 reduction, not to change it.

/ / /

Plaintiff clarified its intention in response to Defendant's offer to settle at $40.3 million for "both years." At that point, Plaintiff stated that it approved "settlement of the 2021 Real Market Value at $40,293,000[,] which is the current 2022 value." Plaintiff's statement expresses a settlement of only the 2021–22 value, with reference to the 2022–23 value for purpose of comparison (and perhaps to remind Defendant of the roll value it had recently forgotten). Plaintiff's terms "[s]ound[ed] good" to Defendant.

Whether intentionally or not, Defendant's grammar in a later email is consistent with having agreed to settle 2021–22 alone. Defendant stated: "We are agreeing to lower the 2021 value to $40.3 and carrying that value over for 2022, which is the current value." The use of the infinitive "to lower" indicates that lowering the 2021 value was part of the agreement, but the use of the verb "carrying" distinguishes the phrase concerning 2022 from the earlier phrase initiated by "agreeing." Thus, Defendant's statement is consistent with Defendant lowering the 2021–22 value by agreement and then carrying forward that value to 2022–23 for some other reason, such as the operation of the adjudicated value statute.[1]

The emails between Defendant and Plaintiff's former representative show what appears to have been a mutual misunderstanding. Regardless of what the parties did or did not understand, however, the court can only grant specific performance of express contractual terms. *See Dalton*, 209 Or App at 410. There is no express agreement not to appeal the 2022–23 value, either in the stipulated agreement or in the emails preceding it.

/ / /

/ / /

/ / /

---

[1] *See* ORS 309.115.

### III.  CONCLUSION

Defendant has not shown a definite agreement forbidding Plaintiff from appealing the subject's 2022–23 real market value.  Now, therefore,

IT IS ORDERED that Defendant's Motion to Dismiss/Enforce Settlement be and hereby is denied.

IT IS FURTHER ORDERED that the parties shall confer and submit a status report proposing next steps to resolve this appeal by November 9, 2023.

Dated this _____ day of October, 2023.

 

 

_____
POUL F. LUNDGREN
MAGISTRATE


*__This interim order may not be appealed.  Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved.  ORS 305.501.__*


*__This document was signed by Magistrate Poul F. Lundgren and entered on October 10, 2023.__*